[Crim. No. 39.    Fifth Dist.    Aug. 3, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. LLOYD
BENNY SANDERS, Defendant and Appellant.

480

Lloyd Benny Sanders, in pro. per., for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Edward A. Hinz, Jr., Deputy Attorney General, for Plaintiff and Respondent.

STONE, J.—Defendant Sanders and a codefendant, Collins, were charged by an information with violation of section 245, Penal Code, assault with a deadly weapon. The attack occurred in the late afternoon of December 15, 1961. Earlier that day the victim, the two defendants, and two other persons, had gone to Manteca, where they secured some marijuana. Upon their return to Modesto from Manteca, the group of five apparently dispersed. At about 5 in the afternoon the victim met the two defendants and a third person at a bar in Riverbank, located in Stanislaus County near Modesto. After drinking some beer, they left the bar, the victim driving the group in his parents' automobile. Along the way they picked up a fifth person who had had no previous contact with the group.

The victim was an informer, and apparently appellant and Collins learned of this some time between the morning activities and the reassembling of the group in the late afternoon. During the ride, appellant ordered the victim to drive on a country road, telling him that they were going to ''work him over for squealing'' on them. Appellant, who was sitting in the front seat, produced a hunting knife and threatened the victim driver with it. An argument ensued and Collins, who was sitting in the back seat, struck the victim over the head with a bottle, which broke. The victim slumped over against appellant, and Collins climbed into the front seat under the wheel. There is evidence that Collins struck the victim a second time with a portion of the broken bottle, and that the second blow cut the victim's face. The victim revived somewhat, grabbed the wheel, and spun the car into a telephone pole, wrecking it completely. Appellant and his three companions fled the scene, leaving the victim in the car, where he was found by a witness who lived nearby.

In addition to the cuts on his face, the victim's finger and jacket were cut. The victim testified that he was cut on the finger by appellant, and that his jacket was cut by appellant's knife. However, on cross-examination he conceded that the cut finger might have been caused by the broken bottle.

The victim was impeached in certain of his testimony. At the preliminary hearing he testified that he made contact with the sheriff's office on the day of the crime when he was picked up on a bad check charge. At the trial he stated that he had called the sheriff's office and asked to have someone come and get him. There was also a conflict in his testimony concerning his connection with the law enforcement officers. He denied working for the sheriff's office, but later explained that he meant that he was not paid by the sheriff's office. He conceded that his whereabouts was known to the sheriff's office at all times. In substance, he testified that although he was acting as an informer, he was doing so without pay.

Appellant declined to take the stand and testify in his own behalf.

■ This appeal in propria persona adds to the ever-increasing number of cases in which an appellant has no conception of the respective functions of the trial and appellate courts. For example, appellant argues that since the victim was impeached, this court must discredit his testimony completely and reverse the conviction. Obviously he is unaware that it is the province of the trial judge to weigh the credibility

of witnesses and to determine to what extent impeachment discredits a particular witness. Appellant's argument that there must be a reversal because the testimony of the principal witness was impeached in part, is answered by *People* v. *Thomas,* 103 Cal.App.2d 669 [229 P.2d 836], a case which also involved assault with a deadly weapon. ■ The court said, at page 672:

"Defendant argues that there are many inconsistencies and contradictions in the testimony of Bennett, and that it was inherently improbable. It was the function of the trial court, not this court, to resolve inconsistencies and contradictions, if any, in the testimony of Bennett. ■ The trier of fact may believe and accept a portion of the testimony of a witness and disbelieve the remainder. ■ On appeal that portion which supports the judgment must be accepted, not that portion which would defeat, or tend to defeat, the judgment. [Citations.] ■ A judgment cannot be set aside on appeal unless it clearly appears that on no hypothesis whatever is there sufficient substantial evidence to sustain it. [Citation.] The testimony of Bennett does not appear to be inherently improbable. ■ Testimony is not inherently improbable unless it appears that what was related or described could not have occurred. [Citation.] 'To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions.' [Citations.]" (See *People* v. *Rankin,* 160 Cal.App.2d 93, 101 [325 P.2d 10].)

The victim's testimony in the case at bar was neither inherently improbable nor did any physical impossibility militate against it.

■ The testimony of the victim of an assault, if believed by the trial court, is sufficient to sustain the conviction without corroboration. (*People* v. *Kersey,* 154 Cal.App.2d 364, 367 [316 P.2d 52]; *People* v. *Oliver,* 102 Cal.App. 29, 34 [282 P. 813]; *People* v. *McCrasky,* 149 Cal.App.2d 630, 635 [309 P.2d 115].) ■ Furthermore, the testimony of the victim is supported by inferences which the trial court had the right to draw from the fact that appellant fled the scene when the vehicle was wrecked during the assault (*People* v. *Roshid,* 191 Cal.App.2d 692, 694 [12 Cal.Rptr. 794]), and from appellant's refusal to take the stand and deny or explain the evidence presented against him. (*People* v. *Adamson,* 27 Cal.2d 478, 489 [165 P.2d 3].)

■ There is testimony that appellant had a hunting knife in his hand as he sat beside the victim in the front seat of the automobile. Although appellant failed to testify, he now denies possession of the knife and argues, additionally, that there is no proof that he actually cut the victim. Conceding that the cut on the victim's hand may have been caused by the broken bottle, the victim's jacket was cut. Even evidence of the cut jacket is unnecessary, since to sustain a conviction of assault with a deadly weapon it is not essential that proof be made that the victim was injured. It need only be proved that a deadly weapon was used and that the defendant intended to commit a violent injury on another. (Pen. Code, § 245; *People* v. *Marcus,* 133 Cal.App.2d 579, 581 [284 P.2d 848].) ■ An assault has been defined as an unlawful attempt coupled with a present ability to commit a violent injury on the person of another. (Pen. Code, § 240; *People* v. *Roshid, supra,* p. 693; *People* v. *McCoy,* 25 Cal.2d 177, 189 [153 P.2d 315].)

Lastly, appellant asserts that he was inadequately represented by his counsel, the public defender. His only specific complaint is that he was induced by his attorney to waive his right to a jury trial. This waiver, appellant insists, was against his will. The record reflects the following proceeding at the outset of the trial:

"THE COURT: . . . I notice that they waived a trial by jury, is that correct?

"MR. HANCOCK: That is my understanding.

"THE COURT: Perhaps we should ask each Defendant again. . . . And you, Mr. Sanders?

"DEFENDANT SANDERS: Your Honor, I would like to talk to Mr. Hancock for a moment.

"THE COURT: Yes, you may. (Defendant Sanders and the Public Defender left the courtroom.)

(Later.)

"THE COURT: Mr. Sanders, you have heard me ask Mr. Collins, your co-defendant, if he waived trial by jury. I now ask you that. Every defendant in a criminal case has the right to have his case heard by a jury of twelve people. The record previously indicates that you waived a jury.

"DEFENDANT SANDERS: Yes.

"THE COURT: Do you waive a jury?

"DEFENDANT SANDERS: Yes.

"THE COURT: You understand the Court will try the case.

"DEFENDANT SANDERS: Yes.

"THE COURT: And you waive a trial by jury and you ask the Court to try the case.

"DEFENDANT SANDERS: Yes.

"THE COURT: Mr. Hancock, you consent and agree to this?

"MR. HANCOCK: Yes, Your Honor."

The court carefully explained to appellant his right to trial by jury and insisted that he personally express his wish for trial by court or jury. In response to the court's explanation and interrogation, appellant with obvious understanding of the proceeding personally waived his right to a jury, and at no time during the trial did he repudiate his choice. As frequently happens, his first complaint was made from hindsight, after the trial court found him guilty.

A review of the record reflects that appellant was represented at the trial as well as could be expected in light of the circumstances surrounding his case. There is nothing to indicate that appellant could have presented a meritorious defense, given a different lawyer. His complaint that he was not properly represented falls far short of a showing that the case was inadequately handled, or that the public defender displayed a lack of diligence or competence. (*People* v. *Wein,* 50 Cal.2d 383, 410 [326 P.2d 457] ; *People* v. *Logan,* 137 Cal.App.2d 331, 336 [290 P.2d 11] ; *People* v. *Odegard,* 203 Cal.App.2d 427, 433 [21 Cal.Rptr. 515].)

The judgment is affirmed.

Conley, P. J., and Brown, J., concurred.