[Crim. No. 6062.  First Dist., Div. One.  Nov. 29, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT J. ROBERTS, Defendant and Appellant.

Patricia Lane for Defendant and Appellant.

Paul N. Halvonick and Coleman A. Blease as Amici Curiae on behalf of Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Lawrence R. Mansir, Deputy Attorneys General, for Plaintiff and Respondent.

ELKINGTON, J.—Defendant was found guilty by a jury of a violation of Penal Code, section 288a. From an order

suspending imposition of sentence and granting probation on certain conditions, he appeals.

As a result of complaints about homosexual activity in a park's public rest room, Deputy Sheriff Gingery and Detective Martin were assigned to investigate. They stationed themselves in a space adjacent to the men's rest room, set apart from that room by a double wood wall separated by an air space of approximately 1½ inches. Several holes were drilled in the wall through which the officers could see what might be called the public portion of the men's rest room—that area visible as one entered the room.

On the afternoon of January 27, 1966, around 3 p.m., Officer Gingery was standing on a 2-by-4 about 6 feet off the ground, peering through one of the holes. He saw a man whom he knew by name copulating his mouth with the sexual organ of a man unknown to the officers. At the same time Officer Martin was looking through a hole about 2 or 3 feet from the floor. He also saw the two men engaged in the act. They were observed by the officers from a distance of 10 or 12 feet for from 20 to 45 seconds. There was no artificial light in the rest room. The lighting conditions were described by one of the officers as fair.

. Officer Gingery took notes at the time to assist in identifying the participants. He saw the full left side and profile of the person unknown to him. Referring to the same person Officer Martin in his report said he ''might be able to identify this subject.''

The above related incident occurred on the first day of the investigation. The observations continued for several days during which time many similar acts took place in view of the officers. After the first day the officers arranged to have a concealed photographer take pictures of persons entering and leaving the rest room. Thereafter the officers observed another homosexual act in the rest room. Pictures of the suspects were taken outside of the rest room. In his report of that act, made that day, Officer Gingery stated that ''Suspect 8,'' one of the participants, was a ''schoolteacher'' (naming him) from (a named) ''High School, who will be positively identified by name, address, et cetera, . . . and is known to this deputy and Detective Martin, . . . [T]he suspects will be identified by this deputy and Detective Martin.''

When the pictures of the later suspects were developed the officers concluded that their positive identification of the schoolteacher was erroneous. In a supplementary report it was

explained by Officer Gingery, "From these photos a positive identification was made on subject 8." This time the positive identification was not of the schoolteacher but of a different person. The supplementary report continued: "Detective Martin was concerned with the identification that was made on that particular time was tentative due to the fading light and the close resemblance of the two suspects. Identification that was listed prior was tentative; however, upon viewing the photographs several positive identifications have been made on the [newly identified] Suspect No. 8 and [the schoolteacher] is cleared from the matter that he was concerned with about being Suspect 8 mentioned in the prior report."

Defendant was arrested two weeks after the January 27 incident. The alleged accomplice was also arrested. He pleaded guilty. He testified for defendant at the trial, admitting his guilt but denying that defendant was the other party involved. Defendant's mother testified that he had been with her the entire afternoon of January 27. Defendant himself did not testify.

The conviction of Roberts rests entirely on his identification by the officers. There is no corroboration.

■ We are bound on this appeal by the well-known rule expressed in *People* v. *Daugherty,* 40 Cal.2d 876, 885 [256 P.2d 911], as follows: "The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. It is not whether guilt is established beyond a reasonable doubt." ■ The direct eyewitness testimony here of the two officers must be deemed substantial evidence. (See *People* v. *Sanders,* 206 Cal.App.2d 479, 482 [23 Cal.Rptr. 725]; *People* v. *Muse,* 196 Cal.App.2d 662, 664 [16 Cal.Rptr. 768].) Their credibility was for the jury to determine. (See *People* v. *Barbera,* 50 Cal.2d 688, 692 [328 P.2d 973]; *People* v. *Wade,* 215 Cal.App.2d 49, 52 [29 Cal.Rptr. 822].)

Nevertheless, we think that the officers' identification of an unknown person through peepholes under "fair" lighting conditions, the deferred arrest and the complete lack of corroboration, make this a "close case" under the principle discussed in Witkin, California Criminal Procedure (1963), section 755, pages 728-729. This belief is fortified by the officers' demonstrated lack of expertise in making identifications.

"When the case against a defendant is a close one, an error which otherwise would not be prejudicial may justify a new

trial.'' (*People* v. *Newson,* 37 Cal.2d 34, 46 [230 P.2d 618];
see also *People* v. *Moore,* 43 Cal.2d 517, 531 [275 P.2d 485];
*People* v. *Baker,* 42 Cal.2d 550, 577 [268 P.2d 705]; *People* v.
*Dail,* 22 Cal.2d 642, 659 [140 P.2d 828].) Certain language of
the case of *People* v. *Adams,* 14 Cal.2d 154 [93 P.2d 146],
which involved a charged violation of Penal Code section 288
seems appropriate here. The court there stated (pp. 167-168):
''. . . miscarriages of justice often result,—with the conse-
quence that innocent men are or have been humiliated, ruined
in character and good reputation, and caused to suffer
ignominiously for the alleged commission by them of offenses
of which they were or are not guilty. It is because of the
recognized existence of the ease with which convictions of
men, even those of unblemished reputation, may be secured in
cases of the instant kind that courts are at pains to insist
upon fair trials in all respects being accorded to the accused.
Errors committed either by the prosecution or by the court in
the course of the trial, which ordinarily might be considered
trivial and as of no material consequence from a standpoint of
adverse effect upon the rights of a defendant, may become of
great importance when committed in a case of the character of
that here involved.''

We consider defendant's assignments of error in the light
of the ''close case'' rule.

█ Defendant urges error in the refusal of the court to
give a requested instruction to the effect that if the jury had
a reasonable doubt as to whether the police officers could
identify the defendant from their place of concealment the
jury should acquit him. This instruction pinpointed defend-
ant's whole case—that his identification by the officers was
mistaken.

The court did instruct the jury in the language of Penal
Code section 1096.[1] Penal Code section 1096a provides: ''In
charging a jury, the court may read to the jury section 1096
of this code, and no further instruction on the subject of the

---

[1]Penal Code section 1096 reads: ''A defendant in a criminal action is
presumed to be innocent until the contrary is proved, and in case of a
reasonable doubt whether his guilt is satisfactorily shown, he is entitled
to an acquittal, but the effect of this presumption is only to place upon the
state the burden of proving him guilty beyond a reasonable doubt. Rea-
sonable doubt is defined as follows: 'It is not a mere possible doubt;
because everything relating to human affairs, and depending on moral
evidence, is open to some possible or imaginary doubt. It is that state of
the case, which, after the entire comparison and consideration of all the
evidence, leaves the minds of jurors in that condition that they cannot
say they feel an abiding conviction, to a moral certainty, of the truth of
the charge.' ''

presumption of innocence or defining reasonable doubt need be given." However, it has been held that where an additional reasonable doubt instruction which points up the theory of the defense is requested, it is error (notwithstanding Pen. Code, §1096a) to refuse to give it.

In *People* v. *Granados,* 49 Cal.2d 490 [319 P.2d 346], the court instructed the jury in the words of Penal Code section 1096. The defendant claimed error in the court's refusal to give a requested instruction as follows (pp. 495-496) : "That if the jurors had a reasonable doubt that the defendant committed a violation of section 288 of the Penal Code or attempted violation of said section on the date of October 1, 1956, then they could not return a verdict of guilty of first degree murder based upon the theory that there was an unlawful killing of a human being with malice aforethought in the perpetration or attempted perpetration of a violation of section 288 of the Penal Code." The Supreme Court also stated at page 496 : "It was error to refuse this instruction. It accurately stated the law and pinpointed the theory of the defense. Section 1096a of the Penal Code declares that when the statutory definition of reasonable doubt is given (see Pen. Code, § 1096), no other instruction need be given defining reasonable doubt. Despite this section, a defendant, upon proper request therefor, has a right to an instruction that directs attention to evidence from a consideration of which a reasonable doubt of his guilt could be engendered."

In *People* v. *Kane,* 27 Cal.2d 693 [166 P.2d 285], the standard instruction of Penal Code section 1096 was read to the jury. The trial judge refused a requested instruction, " 'Before you can convict the defendant in this case, you must be convinced beyond a reasonable doubt that the property taken was against the will and without the consent of Marie H. Echols.' " (P. 698.) The court held (p. 702) : "The considerations which we have reviewed lead us to the conclusions that the refusal to instruct the jury specifically and directly as requested was error and that on the record here we cannot justifiably hold that such error was not prejudicial; i.e., that defendant would have been convicted had the error not occurred. Under such circumstances the judgment cannot be sustained." (See also general discussion, pp. 699-702.)

*People* v. *Wilson,* 100 Cal.App. 428, 432 [280 P. 137], states: "It is manifest that a vast difference might exist between an instruction by which reasonable doubt would be *defined* [as provided by Pen. Code, § 1096a] and one in which

might be stated the law with reference to some fact from which the jury would be authorized to form a conclusion as to whether a reasonable doubt of the guilt of the defendant would follow. . . . In other words, without infringing in any manner on the provision of the statute by attempting to further *define* reasonable doubt, a defendant would still have the right to direct attention to the evidence from a consideration of which a reasonable doubt of his guilt might be engendered. . . ."

In *People* v. *Visconti,* 31 Cal.App. 169 [160 P. 410, 411], defendant requested an additional reasonable doubt instruction to the effect "that it was sufficient to entitle him to a verdict of not guilty if the proof raised in the minds of the jury a reasonable doubt as to the presence of the defendant at the place where the crime was alleged to have been committed and at the time referred to in the information. . . ." (Pp. 170-171.) The instruction was refused. The appellate court stated: "We think that defendant was entitled to have some particular and specific instruction given touching the matter of his defense of an alibi. . . . We are of opinion that the error in refusing to give the offered instruction was prejudicial, and that defendant is entitled to a new trial." (Pp. 171-172.)

We conclude that the failure of the trial court in this case to give the requested instruction was error, prejudicial to the defendant, requiring reversal. Ordinarily such error might not be prejudicial. But in the light of the evidence here such error in our opinion has resulted in a "miscarriage of justice" requiring reversal. (See art. VI, § 13 (formerly § 4½), Cal. Const.)

Because they may affect the retrial of this case we shall discuss certain other points raised by defendant.

■ Defendant contends that the activities of the officers which resulted in the evidence against him were in violation of the Fourth Amendment and article I, section 6, respectively, of the federal and state Constitutions. We find no such violation here.

It has been consistently held that it is proper to receive testimony of police officers as to their observation of acts of sexual perversion through hidden peepholes looking into a public men's rest room where the acts were committed in the open area of the room and would have been in plain view of anyone entering. (*People* v. *Maldonado,* 240 Cal.App.2d 812, 813-814 [50 Cal.Rptr. 45]; *People* v. *Hensel,* 233 Cal.App.2d

834, 836 [43 Cal.Rptr. 865]; *People* v. *Young*, 214 Cal.App.2d 131, 133-135 [29 Cal.Rptr. 492]; *People* v. *Norton*, 209 Cal. App.2d 173, 174-177 [25 Cal.Rptr. 676].)

■ Next, defendant contends that Penal Code section 288a is an unconstitutional legislative invasion of the right of privacy guaranteed by, and violates the ban on cruel and unusual punishment of, the federal and state Constitutions. This attack is founded generally on recent treatises concerning human sexual behavior. The heart of defendant's argument, taken from his brief, is: ". . . no modern authority of the last 20 years, judicial, medical, or sociological, will support the proposition that the prohibition of the act of copulating the mouth on the sexual organ of another accomplishes any compelling legislative purpose."

A similar attack was made on the statute in *People* v. *Ragsdale* (1960) 177 Cal.App.2d 676 [2 Cal.Rptr. 640]. Rejecting the contention that Penal Code section 288a was unconstitutional, the court stated (p. 679): ". . . the making of unnatural sexual relations a crime is embedded in the history of the common law and finds its sanction in the broader basis of the settled mores of our western civilization. There is a considerable body of opinion that as between willing adults the question should be left to moral sanctions alone and eliminated from the criminal law. That however presents a legislative question and not one for the courts."

In support of this argument, defendant cites *Robinson* v. *California*, 370 U.S. 660 [8 L.Ed.2d 758, 82 S.Ct. 1417], proscribing criminal sanctions for drug addiction, and *Griswold* v. *Connecticut*, 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678], concerning a statute prohibiting the use of contraceptives. We do not find these cases to be reasonably applicable here.

The remaining contentions of defendant relate to claimed error which probably will not recur at the new trial. Their consideration is not necessary to a determination of the cause on this appeal.

The order is reversed.

Molinari, P. J., and Sims, J., concurred.