[Crim. No. 26504. Second Dist., Div. Two. Sept. 24, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
JOE STEVE BROOKS, Defendant and Appellant.

## COUNSEL

Michael Korn, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Roy C. Preminger, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BEACH, J.**—After a jury trial, defendant Brooks was convicted of first degree murder and attempted robbery of the first degree. He was sentenced to imprisonment for the term prescribed by law, with execution of the sentence as to the attempted robbery conviction stayed pending appeal, the stay to become permanent upon determination of the appeal. He appeals from the judgment of conviction.

FACTS:[1]

In the early morning on November 30, 1973, Norma Jean Gallon was shot during an attempted robbery at the House of Burgers where she was employed as a waitress. According to testimony at the hearing on the motion to suppress evidence, the suspect was described by witnesses as a male Negro, about 20 years old, 5 feet 9 inches to 6 feet tall, about 150 pounds, on the slender side, wearing a red cap, a blue outfit, and a jacket. Various witnesses described the getaway car as (1) a 1967 four-door green, lowered car with loud mufflers; (2) a 1967-1969 green Chevrolet two-door with a loud muffler; and (3) a car with one Mag wheel on the right side.

---

[1]Sufficiency of the evidence is not in issue. Only those facts relevant to the issues raised on appeal will be discussed.

Approximately two weeks after the incident, the police received an anonymous phone call stating that the person responsible for the homicide was Steve Brooks, described as a male Negro, 21 years old, 6 feet 2 inches, 180 pounds, who lived in apartment 6 of a brown apartment house on 61st Street just east of Central in Los Angeles.

On December 19, 1973, the police went to that apartment building. Adjacent thereto was a 1964 dark green two-door Chevrolet that was lowered and had a Mag wheel on the right front tire. The name "Brooks" was on the mail box of apartment 7, so the police proceeded to that apartment. Officer Gobel knocked and a woman answered the door. She invited the officers to enter. Defendant appeared from the bedroom door, and Officer Gobel noted that he looked close to the description that had been given of the gunman. Defendant was taken to the precinct station, where he was interviewed and then arrested. After he was booked, he participated in a lineup, the subject of the motion to suppress. He was positively identified by Miss Ivory and Clarence Johnson, both of whom had seen him at the House of Burgers. The motion to suppress was based on the contention that an arrest without a warrant is illegal absent exigent circumstances; it is conceded that there was no warrant in the instant case.

In addition to the motion to suppress, appellant made a pretrial motion contesting the system of selection of prospective jurors. At that time, jurors for the Central District, where the crime was committed and the trial held, were chosen from a county-wide rather than a district-wide method, while jurors for the other districts were chosen solely from that district. Since the minority representation in the Central District is much higher than that in the county as a whole, appellant contends this underrepresentation of minorities amounted to denial of an impartial jury. The trial court rejected this argument.

The substantive defense was alibi. During the trial, the court refused to allow the testimony of appellant's purported expert on the inaccuracy of eyewitness identification. There was an offer of proof that, if allowed to testify, Dr. Fraser would testify that it is possible for witnesses to be positive in their identification and yet be in error; that repeated exposure to the person produces increased commitment to the identification; and that various psychological needs encourage a person to identify a suspect. Objections were made that Dr. Fraser is not an expert in this particular field and that the evidence is not probative to the jury's consideration. The trial court held that this type of proof has not yet reached a stage of acceptability in the legal community.

CONTENTIONS ON APPEAL:

1. Appellant was denied an impartial jury in that the system of selection of prospective jurors in the trial court was unconstitutional under the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution.

2. Appellant's motion to suppress should have been granted as no exigent factors justified his warrantless arrest and seizure.

3. The trial court erred in refusing appellant's requested instruction on reasonable doubt.

4. The trial court erred in refusing to permit Dr. Scott Fraser to testify.

DISCUSSION:

1. ■ *The system under which the jurors for the Central District were chosen is constitutional.*

Appellant's contentions regarding the jury panel have been answered in *Adams* v. *Superior Court,* 27 Cal.App.3d 719 [104 Cal.Rptr. 144]; *People* v. *Superior Court (Bowen),* 27 Cal.App.3d 738 [104 Cal.Rptr. 159]; and *Sandoval* v. *Superior Court,* 27 Cal.App.3d 741 [104 Cal.Rptr. 157].

2. *The trial court properly denied appellant's motion to suppress evidence.*

■ Appellant claims that, absent exigent circumstances, an arrest may not be made without a warrant. This contention is contrary to existing California law: " 'A peace officer may arrest a person *without a warrant* whenever he has reasonable cause to believe that the person to be arrested has committed a felony. (Pen. Code, § 836, subd. (3).)' " (Italics added.) (*People* v. *Terry,* 2 Cal.3d 362, 393 [85 Cal.Rptr. 409, 466 P.2d 961]; see also *People* v. *Fein,* 4 Cal.3d 747, 752 [94 Cal.Rptr. 607, 484 P.2d 583]; *Hill* v. *California,* 401 U.S. 797, 804 [28 L.Ed.2d 484, 490, 91 S.Ct. 1106]; *Ker* v. *California,* 374 U.S. 23, 25 [10 L.Ed.2d 726, 732-733, 83 S.Ct. 1623].)

The police went to appellant's apartment after the tip of an anonymous informant. Information from an untested informant, without

corroboration, does not constitute reasonable cause for arrest or search. (*People* v. *Fein, supra,* 4 Cal.3d at p. 752.) When Officer Gobel reached that apartment building designated by the informant, he saw the green car parked adjacent thereto. Upon further investigation, he went to the apartment and saw the suspect, who he observed matched the physical description of the gunman given by witnesses to the murder.[2] At that point he certainly had reasonable cause to arrest defendant. We find nothing in this behavior that violates the Fourth Amendment to the United States Constitution.

3. *The trial court did not err in refusing appellant's requested instruction on reasonable doubt.*

■ Relying on *People* v. *Roberts,* 256 Cal.App.2d 488, 492 [64 Cal.Rptr. 70], appellant requested the following instruction: "If you have a reasonable doubt as to whether the identifying witness could identify the perpetrator of the crime from his place of view, you must acquit the defendant." The court refused that instruction. However, CALJIC No. 2.90[3] and the following instruction on identification were given: "The burden is on the People to prove beyond a reasonable doubt not only that the offense was committed as alleged in the information but also that the defendant is the person who committed it. You must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If the evidence of the identification is not convincing beyond a reasonable doubt, you must find the defendant not guilty."

In *Roberts, supra,* the police officers were looking through peepholes into a public restroom with only "fair" light. An identification of one suspect had admittedly been mistaken. The only reasonable doubt

---

[2]Though not formally "arrested" until at the station after an interview, appellant was not free to leave from and after the time of the meeting at the apartment.

[3]CALJIC No. 2.90 reads as follows: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal. This presumption places upon the State the burden of proving him guilty beyond a reasonable doubt. Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge."

instruction given was the general one that incorporates Penal Code section 1096. In contrast, appellant points to no evidence showing that the identifying witness could not "identify the perpetrator of the crime from his place of view." Alibi was certainly a defense, and identity was a principal issue at trial; but there is no evidence that the "place of view" of either eyewitness obscured the view of the gunman. Miss Ivory testified that defendant was the gunman. The lighting inside and outside of the House of Burgers was good; there were fluorescent lights outside of each window; she was standing about seven feet from the gunman and had no trouble seeing his face and features. Clarence Johnson, the other eyewitness, was also just a few feet from the gunman when he approached the window and again when he left after shooting Norma; he testified that "They have quite a bit of lighting in the front" and that he got a good look at the gunman when appellant was walking up to the hamburger stand.

The instruction regarding reasonable doubt about the identification was more in accord with the actual defense theory. The trial court is not required to give any jury instruction that has no foundation in the evidence. (*People* v. *Carter,* 48 Cal.2d 737, 758 [312 P.2d 665].) We find no error in the trial court's refusal to give the requested instruction.

4. *The trial court did not err in refusing to permit Dr. Fraser to testify.*

■ Appellant wanted Dr. Fraser to testify regarding the perception and recollection of eyewitnesses concerning both the initial incident and subsequent identification of the suspect. This decision was well within the trial court's discretion.

"Evidence Code section 780 enumerates the varieties of impeaching evidence a jury may consider, including (under subd. (c)) the witness' capacity to perceive, recollect and communicate. Contrary to defendant['s] argument, it does not follow that a party has a right to impeach a witness by calling another witness to testify as to the former's capacity." (*People* v. *Johnson,* 38 Cal.App.3d 1, 6 [112 Cal.Rptr. 834].)

In rejecting defendant's offer of the purported expert testimony, the trial court correctly ruled. Such practice "would take over the jury's task

of determining the weight and credibility of the witness' testimony."
(*People* v. *Johnson, supra,* 38 Cal.App.3d at p. 7.)

The judgment is affirmed.

Roth, P. J., and Compton, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 20, 1975.