[Crim. No. 31706. Second Dist., Div. Four. Jan. 11, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
MARK EDWARD DE LA PLANE, Defendant and Appellant.

■■■■■■■■■■■■■■■■

**COUNSEL**

James A. Goldstein, Ball, Hunt, Hart & Baerwitz, Robert Aitkin and Gary L. Stein for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and William R. Pounders, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**JEFFERSON (Bernard), J.**—Defendant appeals from a judgment convicting him of the offenses of robbery (Pen. Code, § 211) and murder (Pen. Code, § 187) following verdicts in a jury trial. Initially, an information was filed on September 27, 1976, charging defendant with having committed a robbery of Joel Irving Arisohn on February 23, 1976. It was also alleged that, at the time of the commission of the robbery, defendant was armed with a firearm—a deadly weapon, and that he used a firearm within the meaning of Penal Code section 12022.5, and further, that the firearm used was a .22 caliber revolver within the meaning of Penal Code section 1203.06, subdivision (a)(1). By a separate amended information, filed April 23, 1977, defendant was charged with having committed the offense of murder on December 11, 1976. The victim of the murder was alleged to be Kevin John Pfaffl. It was also alleged in this amended information that defendant used a .22 caliber firearm in the commission of the offense within the meaning of Penal Code section 12022.5.

On the People's motion, the two cases were consolidated, the murder charge becoming count II of the information charging defendant with robbery. Defendant's pretrial suppression-of-evidence motion, made pursuant to Penal Code section 1538.5, was denied. The jury found defendant guilty of both offenses, finding the robbery to be of the first degree and that defendant used a firearm in the commission of the offense. The jury also found the murder offense to be of the first degree and that defendant used a firearm in the commission of that offense. Defendant's motion for a new trial was denied and he was sentenced to state prison for the term prescribed by law for both offenses, with the two sentences to be served concurrently.

■■■■■■■■

# I

## *The Factual Background*

Since defendant does not contest the sufficiency of the evidence to sustain the convictions, the evidence and facts will be set forth with this position of defendant in mind.

The robbery occurring on February 23, 1976, was of a McDonald's restaurant at 12919 Victory Boulevard in North Hollywood. Joel Arisohn testified that he was the assistant manager of the restaurant and was robbed at gun point at about 2 a.m. by a man wearing a green ski mask over his face and green rubber gloves over his hands. Approximately $5,000 to $6,000 was taken from the safe and the cash drawers.

The police had been alerted while the robbery was in progress and observed a white pickup truck proceeding from the area. The truck stopped and two men exited and ran. One suspect was found in some bushes nearby. He was Kevin Pfaffl, the victim of the murder charge against defendant. Kevin admitted his participation in the McDonald robbery and named defendant as a coperpetrator. Defendant admitted to several persons that he had been involved with Kevin in the robbery and had been the gunman wearing the ski mask.

Kevin was killed in the early morning hours of December 11, 1976, just outside of an apartment complex at 3633 Colfax in North Hollywood where he was living with his father. Kevin suffered two injuries to the head that resulted from a blunt trauma. In addition, he received two bullet wounds. The first bullet went into the left cheek and behind the mouth into the oropharynx. The second bullet was the fatal one—a gunshot that entered the middle of the chest and perforated the heart. Two .22 caliber bullets were recovered from Kevin's body. The evidence against defendant as the perpetrator of Kevin's murder was all circumstantial.

# II

## *Defendant's Assertions With Respect to*
## *Errors Occurring Below*

Defendant asserts that the following errors occurred below which require reversal of the judgment: (1) It was error to receive into evidence

rubber gloves and a wallet and its contents, seized in violation of Penal Code section 844. (2) The testimony of Karen Beck regarding an unidentified person's statement was inadmissible hearsay. (3) The court's denial of defendant's motion to be allowed to send samples of hair removed from the ski mask to the Institute of Forensic Sciences for analysis was in violation of defendant's due-process-of-law rights. (4) The introduction into evidence of an axe handle was an abuse of discretion. (5) The court erred in refusing to permit defendant to call witnesses who would have given exculpatory testimony in defendant's favor. (6) It was error for the trial judge to admit into evidence tape-recorded statements of Kevin, the murder victim, because the tape contained references to an uncharged crime committed by defendant and the probative value was outweighed by its prejudicial impact. (7) It was error for the court not to give, *sua sponte,* an instruction on diminished capacity. (8) The court erred in consolidating the robbery and murder charges and denying defendant's subsequent severance motion. (9) The evidence of the tape of police calls was inadmissible hearsay. (10) The court's refusal to permit defendant to interrogate the jury during voir dire regarding the standard of proof to sustain a conviction violated defendant's due process rights.

## III

*The Question of Whether the Evidentiary Items—Rubber Gloves, and a Wallet and Its Contents—Were Seized in Violation of Penal Code Section 844*

At the hearing on defendant's suppression-of-evidence motion, Police Officer Richard Morrison testified that, soon after Kevin's arrest for the McDonald's robbery, Kevin gave the information that he and defendant were riding around and decided on the spur of the moment to commit the McDonald's robbery. Kevin gave his address to the officers interviewing him and consented to a search of his apartment, indicating that defendant was temporarily a guest at his apartment but doubted whether defendant would be there even if the officers were to proceed immediately to the apartment.

Police Officer John Holland testified at the suppression-of-evidence hearing that he had been in the search area near McDonald's on the morning of the robbery and, later that morning at the police station, overheard the conversation between Kevin and Morrison and other officers. Holland testified that he was directed to go to Kevin's apartment

and search for defendant as the additional suspect and to search for evidence. He then proceeded to Kevin's apartment in a marked police vehicle with his partner. The landlady gave Holland the key to Kevin's apartment. Holland knocked on the door but did not announce that they were police officers. There being no response to the knock, they used the key and entered the apartment.

A search of the apartment did not reveal the presence of anyone. The officers observed a pair of green rubber gloves in an open suitcase on the floor along with a wallet. The officers then left, changed into civilian clothes and returned to the apartment. Again, they knocked but did not announce their identity as police officers. The landlady's key was used on this second occasion to gain entry. Defendant was not in the apartment and did not return during the approximately two hours that the officers remained there. Before leaving, the officers seized the rubber gloves and wallet which contained defendant's identification.

Defendant contends that the seizure of the gloves and wallet and its contents was in violation of Penal Code section 844[1] and should have been suppressed. It is obvious that there was no compliance with section 844 since the officers did not announce their identity before using the key to enter. ■ There is no compliance with section 844 if police officers fail "(1) to knock or utilize other means reasonably calculated to give adequate notice of their presence to the occupants, (2) to identify themselves as police officers, and (3) to explain the purpose of their demand for admittance." (*Duke* v. *Superior Court* (1969) 1 Cal.3d 314, 319 [82 Cal.Rptr. 348, 461 P.2d 628].)

The People assert that compliance with Penal Code section 844 was excused because of the following exceptions to the requirement of compliance: (1) Kevin's consent for the officers' entry; (2) the officers believed that compliance would increase the risk of injury to them; and (3) the officers were in fresh pursuit of the defendant—a suspect in the McDonald's robbery.

Kevin's consent for the officers to enter his apartment cannot be used to excuse compliance with section 844. ■ Consent by an *absent*

---

[1]Penal Code section 844 provides: "To make an arrest, a private person, if the offense be a felony, and in all cases a peace officer, may break open the door or window of the house in which the person to be arrested is, or in which they have reasonable grounds for believing him to be, after having demanded admittance and explained the purpose for which admittance is desired."

*occupant* does not excuse compliance with Penal Code section 844 (*Duke v. Superior Court, supra,* 1 Cal.3d 314), but if a police entry is "consented to by persons present inside the house, the section does not apply." (*Mann* v. *Superior Court* (1970) 3 Cal.3d 1, 9 [88 Cal.Rptr. 380, 472 P.2d 468].)

In *People* v. *Tribble* (1971) 4 Cal.3d 826, 833 [94 Cal.Rptr. 613, 484 P.2d 589], the court sets forth three types of an emergency situation in which the announcement requirements of section 844 are not imposed upon police officers because of known facts which support an officer's good faith belief that compliance should not be undertaken: *First,* where compliance will increase the officer's peril. *Second,* where compliance will frustrate the arrest. *Third,* where compliance will permit the destruction of evidence.

In the case at bench, Officer Holland testified at the suppression-of-evidence hearing that he did not announce that they were police officers before making an entry into Kevin's apartment because he was aware that an armed robbery had recently occurred and believed that the suspect might be in the apartment and armed. Hence, for their own safety, they entered Kevin's apartment without proper announcement.

We are thus concerned with the question of whether compliance with Penal Code section 844 was excused on the ground of an increase in the officer's peril. In *People* v. *Dumas* (1973) 9 Cal.3d 871 [109 Cal.Rptr. 304, 512 P.2d 1208], the court had before it a situation in which officers had information that the defendant was in possession of a firearm. The *Dumas* court points out that such knowledge alone does not present a factor to excuse the police from giving notice of their authority and purpose. "Police knowledge of the existence of a firearm excuses compliance with announcement requirements only where the officers reasonably believe the weapon will be used against them if they proceed with the ordinary announcements." (*Dumas, supra,* 9 Cal.3d 871, 878.) In *Dumas,* however, the police had additional information that the defendant habitually answered the door with a firearm in his hand. This additional factor was deemed sufficient to excuse the announcement requirements on the theory that peril to the officers would be substantially increased. The officers could reasonably infer that the defendant would employ deadly force in order to prevent his arrest.

In the case at bench, the officers knew that an armed robbery had recently been committed and that defendant was a suspect who was likely

to be armed. We conclude that the officers could reasonably believe that a defendant who had just been engaged in committing an armed robbery might well use deadly force upon them to avoid apprehension. We perceive of no significant difference between the case at bench and the factual situation in *Dumas* with respect to the justification for relieving police officers of strict compliance with the announcement requirements of Penal Code section 844. Therefore, defendant's suppression-of-evidence motion was properly denied. The evidence seized was relevant as Joel Arisohn testified that the robber wore green rubber gloves.

## IV

### The Question of Whether Karen Beck's Testimony Regarding an Unidentified Person's Statement Constituted Inadmissible Hearsay

Karen Beck testified that in the early morning hours of December 11, 1976, she was in the parking lot of the apartment buildings complex where she lived and which was the complex where Kevin lived with his father. She first heard noises coming from one of the buildings and then observed defendant on the landing between the first and second floor; that defendant had some sort of stick in his hand; that she then heard a person whom she could not see say, "I had to do it." She next heard defendant reply: "No, you didn't have to." Karen then hurried to her apartment in a different building and, shortly thereafter, heard several shots ring out. Karen's testimony as to the statement made by an unidentified person and the statement made by defendant were objected to as being hearsay.

It is defendant's contention that the trial court erred in overruling his hearsay objection to Karen's testimony that an unidentified person made the statement, "I had to do it." This statement, if offered to prove the truth of the matter stated in the statement, would constitute inadmissible hearsay. (Evid. Code, § 1200.) The truth of the matter stated would be the declarant's state of mind—his *belief* that he was compelled to do whatever the "it" referred to.

It is obvious that the prosecutor did not offer the unidentified person's statement to prove its truth but for a nonhearsay purpose. What relevant nonhearsay purpose is involved here? Other evidence introduced by the

prosecution established that Kevin had identified defendant to the police and prosecution as being involved—not only in two McDonald's robberies —but in a Cal-Stereo robbery, and that Kevin was planning to testify against defendant in the Cal-Stereo robbery, having made a plea-bargain agreement with the prosecution. A significant item of evidence was that defendant had become aware of Kevin's actions in these cases and was unhappy about them.

This evidence established a motive for defendant to kill Kevin. Evidence to prove defendant's *motive* constitutes relevant circumstantial evidence tending to establish that defendant acted in conformity with such motive—a mental fact—and committed the offense of Kevin's murder. (*People* v. *Beyea* (1974) 38 Cal.App.3d 176 [113 Cal.Rptr. 254]; *People* v. *Grantham* (1972) 26 Cal.App.3d 661 [103 Cal.Rptr. 262].) It was also established by other evidence that Kevin resided with his father at the apartment complex where Karen heard the statement of a person whom she did not see. Also, shortly after hearing the conversation between defendant and the unidentified person, shots rang out and, only moments later, Kevin appeared in his father's apartment, mortally wounded, and having suffered two blows to the head from a blunt instrument.

From this evidence the jury could reasonably conclude that Kevin was the person who made the statement which Karen heard, and that Kevin's statement, "I had to do it," referred to Kevin having involved defendant in three robberies and Kevin's plan to testify against defendant in one of these robberies. Defendant's reply, "No, you didn't have to do it," is capable of a reasonable inference that defendant became incensed at Kevin because of the "I had to do it" statement, thus providing added fuel to the fire of motive—engendered by Kevin's actions inculpating defendant in three robberies.

Thus, Karen's testimony as to the statement of a person unknown to her becomes relevant as circumstantial evidence of the *declarant's identity* as Kevin, the murder victim, by reason of the other items of evidence set forth herein. The inference of identity is a reasonable inference by virtue of these other items of evidence being added to Karen's testimony as to declarant's statement addressed to defendant at the specific location and time involved.

V

■ *The Question of Whether Defendant Was Denied Due Process of Law by the Trial Court's Denial of His Motion to Have an Independent Analysis of the Hair Strands Taken From the Ski Mask*

A ski mask was found near the place where Kevin was discovered shortly after the McDonald's robbery. It was identified as being similar to the mask worn by the robber who confronted Joel Arisohn at McDonald's. During the presentation of the People's case in chief, strands of hair found in the mask were removed and analyzed by Criminalist Linda Baxter of the Los Angeles Police Department. While the samples were being analyzed, defendant made a motion that he be allowed to send the samples of hair, then being analyzed by the People's expert, to the Institute of Forensic Sciences, Oakland, California, for analysis. The trial court denied defendant's motion but indicated that defendant would be permitted to find a local expert to make such examination and analysis. Defendant's counsel stated that he did not know of any qualified local expert. The court replied that it would be up to counsel to locate such a local expert.

Subsequently, Criminalist Baxter testified that she examined eleven hair strands; that two were white animal hairs and the other nine were Caucasian hairs which were light orange to red-orange in color, one-half inch to two and three-sixteenths inches long and were curled. She testified that, although the exact body origin of the hairs was not determined, they were consistent with head hair, eyebrow or possibly sideburn hair.

It is defendant's position that the denial of his motion constituted a denial of his due process rights to a fair trial. No authority is cited for this position. Defendant made no showing before the trial court that he was unable to locate an expert in the Los Angeles area with expertise in hair analysis. A motion such as that made by defendant is addressed to the sound discretion of the trial court. Defendant has made no showing before us of prejudice resulting from the trial court's ruling limiting the examination and analysis of the hairs found in the ski mask to an expert in the local community. "[I]n the absence of a *prejudicial* refusal such a denial will not work a reversal on appeal." (*People* v. *Farrington* (1931) 213 Cal. 459, 465-466 [2 P.2d 814].) (Italics added.)

## VI

 *The Admissibility of the Axe Handle Found*
*at Defendant's Residence*

Defendant was arrested at the home of his father on December 11, 1976. The police recovered from a bathroom a sawed-off axe handle wrapped with black plastic tape. This axe handle was admitted into evidence over defendant's objection that it was irrelevant, but, if relevant, should be excluded under Evidence Code section 352 because its probative value was substantially outweighed by the danger of undue prejudice to defendant. Defendant urges the same grounds before us for asserting error in the trial court's ruling. In ruling the axe handle admissible, the trial court commented that it had the weight and heft of a small baseball bat and that the black plastic electrician's tape was wrapped around the handle to constitute a handmade grip.

In urging its inadmissibility, defendant points out that Karen Beck described the object she saw in defendant's hand just prior to the homicide as a "stick of some kind." Before he died, Kevin, the victim, described the object which struck him as a baseball bat. Dr. Breton, who performed the autopsy on the victim, testified that the two wounds to the head were the result of the head being struck with a rod-shaped object. It was his opinion that the sawed-off axe handle *could* have caused the wounds to Kevin's head.

If a victim's wound *could* have been caused by a specific type of weapon or instrument, such a weapon or instrument found in defendant's possession is admissible in evidence. Such a weapon or instrument is considered relevant on the theory that a trier of fact may reasonably draw an inference from defendant's possession of the weapon or instrument to the fact that he used the weapon or instrument to commit the offense—a disputed fact of consequence in the action. (*People* v. *Tahl* (1967) 65 Cal.2d 719 [56 Cal.Rptr. 318, 423 P.2d 246] (a sap); *People* v. *Riser* (1956) 47 Cal.2d 566 [305 P.2d 1] (holster for a Smith and Wesson .38 special revolver.)

In *People* v. *Wiley* (1976) 18 Cal.3d 162 [133 Cal.Rptr. 135, 554 P.2d 881], a murder victim had wounds some of which were consistent with injury inflicted by a blunt instrument such as a baseball bat and others that could have been made by a hammer. A witness testified to seeing a baseball bat and a hammer under a bed in defendant's home but they

had been removed and disposed of by someone. The prosecution introduced into evidence, for illustrative purposes, a bat and a hammer which the witness testified closely resembled the bat and hammer she found under the bed. The *Wiley* court held that even though the murder weapons were never found, it was not error for the trial court to permit the prosecution to produce a bat and hammer for illustrative purposes since a proper foundation had been laid through the testimony of a witness that established that the items closely resembled the implements taken from beneath defendant's bed.

The evidentiary principle announced by *Wiley* is that the trial judge exercises sound discretion in admitting material objects for illustrative purposes even though such material objects are *not* established to be the specific objects involved in the crime charged.

In the case at bench, in view of the testimony of Dr. Breton who performed the autopsy on Kevin's body, the taped and sawed-off axe handle, found in defendant's home, became admissible as relevant evidence tending to establish defendant's guilt under the principles set forth in *Tahl, Riser* and *Wiley.* Although Karen's testimony described the object she saw in defendant's hand as appearing to be a stick and Kevin's statement before his death described the object which struck him to be a baseball bat, this testimony was not such as to establish that Kevin's head wounds could *not* have been caused by an axe handle which would then have made the axe handle irrelevant and inadmissible as material-object evidence. (See *People* v. *Vaiza* (1966) 244 Cal.App.2d 121 [52 Cal.Rptr. 733].) ▮ Evidence that a defendant had in his possession a weapon that could *not* have been used in the crime charged leads logically only to an inference that such defendant is the kind of person who surrounds himself with deadly weapons—an inference of no relevant consequence to a determination of his guilt or innocence. (See *People* v. *Henderson* (1976) 58 Cal.App.3d 349 [129 Cal.Rptr. 844].)

▮ In the instant case, although the trial court could have excluded the axe handle found in defendant's home by finding that the probative value of the evidence was substantially outweighed by the danger of undue prejudice to defendant, acting under Evidence Code section 352, we find no abuse of discretion in the court's failure to do so. In view of the record before us, we conclude that the trial court properly exercised its discretion in admitting the axe handle into evidence and finding that its probative value was not substantially outweighed by any danger of undue prejudice to defendant.

## VII

### *The Question of Whether the Trial Court Erred in Excluding Testimony of Certain Witnesses Defendant Proffered in His Defense*

■ A. *The Testimony of Lonnie Abel*

Defendant made an offer of proof that Lonnie Abel, a juror in the previous trial of defendant which ended in a hung jury, was prepared to testify in favor of defendant. The testimony which Lonnie would give was to the effect that she had heard the testimony of John Pfaffl, Sr., the father of Kevin, the victim in the instant case. Lonnie Abel would testify to statements given by Mr. Pfaffl during the first trial, which were inconsistent with his testimony given in the present trial and would be admissible under the prior-inconsistent-statement hearsay exception set forth in Evidence Code section 1235. The trial court rejected defendant's offer of proof but permitted Mr. Pfaffl to be impeached by the transcript of his testimony in the first trial which was inconsistent with his testimony in the current trial. The trial court predicated its refusal to permit juror Lonnie Abel to testify on the basis of Evidence Code section 352.

■ Defendant urges the contention that it is a misuse of Evidence Code section 352 for the trial court to exclude proffered *defense* evidence even though such evidence is cumulative of other evidence. We know of no rule which precludes the trial court from using Evidence Code section 352 in the prosecution's favor to exclude evidence offered by defendant, the probative value of which is substantially outweighed by the danger of undue prejudice to the *prosecution.* In *People* v. *Arline* (1970) 13 Cal.App.3d 200 [91 Cal.Rptr. 520], the court held that the prosecution in a criminal case is entitled to the benefit of Evidence Code section 352 and to have excluded relevant evidence proffered by defendant because the probative value of such evidence is substantially outweighed by danger of undue prejudice to the prosecution.

■ The *Arline* principle is applicable to the case at bench. The proffered testimony of juror Lonnie Abel would have informed the jury that defendant had undergone a first trial for the offenses now charged against him and that this first trial had resulted in a hung jury. This evidence would be clearly irrelevant to any issue in the case and could substantially prejudice the prosecution's case against defendant. A criminal defendant has no right to present cumulative evidence in his

favor which would create a danger of substantial prejudice to the prosecution any more than the prosecution has no right to present cumulative evidence which creates a substantial danger of undue prejudice to the defendant.

Defendant's claim that precluding him from presenting such cumulative evidence in his defense constitutes a denial of defendant's due process rights to a fair trial is lacking in merit.

### B. *The Testimony of Randy Turrow, Lewis Sanchez and James Page*

Defendant proffered the testimony of Turrow, Sanchez and Page to establish that, under circumstances of time, distance and lighting similar to that described by Karen Beck in making her identification of defendant on the night of the murder, they were unable to make such an identification and give descriptions of matters such as facial features and hair color. Defendant argues that it was error for the trial court to exclude this testimony.

This contention of defendant lacks merit since such testimony is irrelevant. Such testimony would have no tendency in reason, as required by Evidence Code section 210, to attack the credibility of Karen Beck, a disputed issue in the instant case. The fact that three persons could not make an accurate identification of another under conditions substantially the same as that which Karen Beck testified existed would have no tendency in reason to establish that Karen lacked the ability to make such an identification. For the evidence proffered by defendant to be relevant for this purpose would require acceptance of the premise that under substantially similar conditions all people either have the capacity or incapacity to make accurate observations. Defendant offered no evidence that such a premise is accurate.

The inference which defendant sought to have drawn from the testimony of these three witnesses is clearly speculative, and evidence which produces only *speculative* inferences is *irrelevant* evidence. The courts have excluded even stronger evidence than that proffered by defendant to attack the capacity of a witness to accurately observe, recollect and communicate facts about which he testifies. In *People* v. *Johnson* (1974) 38 Cal.App.3d 1 [112 Cal.Rptr. 834], the court refused to permit a psychologist to testify that the capacity of witnesses to identify a robbery suspect would be distorted by the effects of excitement and fear on the witnesses' capacity of perception and recollection. Similar to

*Johnson* is *People* v. *Brooks* (1975) 51 Cal.App.3d 602 [124 Cal.Rptr. 492], and *People* v. *Guzman* (1975) 47 Cal.App.3d 380 [121 Cal.Rptr. 69]. It is a matter of common experience that factors such as lighting, distance and positioning will affect a person's capacity to observe accurately and that these factors will affect some persons differently than others.

C. *Proposed Testimony Concerning Burglaries of Defendant's and Defense Counsel's Homes and the Destruction of Defendant's Automobile*

Defendant made an offer of proof to introduce evidence which would establish that on March 19 or 20, 1977, defendant's car was destroyed and defendant's home was burglarized and that on March 25, 1977, defense counsel's home was burglarized. As part of the offer of proof defendant sought to introduce evidence that on March 18, 1977, George Stefani was served with a subpoena by the defense and that on March 21, 1977, Stefani made a threat against defense counsel. Defendant contended that this proposed evidence was relevant on the defense theory that Stefani was the person who had killed Kevin. It was the defense theory that Stefani had a motive to kill Kevin since Stefani was made aware also of the actions of Kevin, which incriminated Stefani in the Cal-Stereo robbery. The trial court rejected defendant's offer of proof and defendant claims that this ruling was error. Defendant's offer of proof did not set forth any evidence that would tend to connect Stefani with the destruction of defendant's automobile and the burglary of the homes of defendant and his counsel. Defendant argues that this evidence was relevant since it tended to establish that the burglaries and the threat to defendant's counsel amounted to an intimidation of witnesses by Stefani which was relevant to prove a consciousness of guilt on the part of Stefani.

This contention of defendant is lacking in substance. Even if defendant had offered evidence that Stefani had committed a burglary of the homes of defendant and defendant's counsel after having been served with a subpoena to testify as a witness, such evidence cannot be said to raise a reasonable inference that Stefani was the perpetrator of the Kevin murder. Stefani was called as a witness by the defendant and admitted that he had listened to a taped statement made by Kevin to the prosecution in which Kevin implicated Stefani in the Cal-Stereo burglary. This testimony brought out a possible motive for Stefani to have been the perpetrator of the Kevin murder. The evidence, however, that Stefani had burglarized the premises of defendant and defense counsel

and hàd destroyed the automobile of defendant because Stefani had been subpoenaed by the defense to testify in the current case could have no tendency in reason to establish that Stefani was the perpetrator of the Kevin murder. Any inference from evidence of the burglaries and malicious destruction of an automobile to the fact that Stefani was the perpetrator of the Kevin murder would be clearly speculative and lacking in trustworthiness or reliability based on either logic or experience.

 Speculative inferences that are derived from evidence cannot be deemed to be relevant to establish the speculatively inferred fact in light of Evidence Code section 210, which requires that evidence offered to prove or disprove a disputed fact must have a tendency in reason for such purpose. Thus, in *People* v. *Doran* (1972) 24 Cal.App.3d 316 [100 Cal.Rptr. 886], a defendant proffered evidence that, while in custody, he had an opportunity to flee but did not flee. He made the argument that such evidence led to an inference of a consciousness of innocence, which would be relevant to establish that he did not commit the offense charged. The *Doran* court rejected this argument of relevancy on the theory that the inference sought to be drawn was entirely too speculative and unreasonable to satisfy the test of relevancy.

In *People* v. *Hannon* (1977) 19 Cal.3d 588 [138 Cal.Rptr. 885, 564 P.2d 1203], defendant, charged with robbery, called an alibi witness to testify in his favor. On cross-examination, the prosecutor sought to elicit from the alibi witness that defendant's attorney had advised him not to speak to the prosecutor's investigator about the case. In response to an irrelevancy objection made by the defendant, the prosecutor stated that the evidence sought to be elicited would be relevant to show the defendant's attempt to suppress evidence. The *Hannon* court held that an attorney's advice to his own witness not to discuss the case with the other side was not reasonably capable of leading to a relevant inference such as consciousness of guilt, which is a reasonable inference to be drawn from a party's attempt to suppress unfavorable evidence. In *Hannon,* the evidence to be given by the alibi witness was not evidence unfavorable to the defendant. The defense attorney's instruction to such a witness to refuse to talk to the prosecutor's investigator could not reasonably lead to an inference that the defense was seeking to suppress unfavorable evidence. In *People* v. *Allen* (1976) 65 Cal.App.3d 426 [135 Cal.Rptr. 276], it was held that statements made by the defendant were inadmissible because the inference sought to be drawn was clearly speculative and lacked trustworthiness on the prosecution's theory that the statement reasonably led to an inference that defendant had a consciousness of

guilt. The *Allen* court held that the inference of a consciousness of guilt sought to be drawn from the evidence of the defendant's statement was even more speculative in character than the inference sought to be drawn from the evidence presented by defendant to establish his innocence in *People v. Doran, supra,* 24 Cal.App.3d 316. The inference sought from the evidence proffered by defendant in the case at bench regarding the burglaries of the homes of defendant and defense counsel and the malicious destruction of defendant's automobile is no less speculative in character than the inferences sought from evidence offered in *Doran* and *Allen.* The trial court correctly ruled that such evidence was irrelevant and, therefore, inadmissible.

## VIII

*The Admissibility of Evidence of the Tape-recorded
Statements of Kevin, the Murder Victim, Which
Implicated Defendant in Uncharged Offenses Considered
in View of Its Potential for Prejudice to Defendant*

Defendant attacks the ruling of the trial judge which permitted to be played before the jury a tape recording of Kevin's statements made to a deputy district attorney. The tape indicated that the prosecutor stated that if Kevin made statements which implicated defendant in a Cal-Stereo robbery and in two robberies of McDonald's restaurants and if Kevin would testify against defendant with respect to these robberies, he would be permitted to plead guilty to one count of grand theft. The tape reveals that Kevin so agreed and then proceeded to set forth in detail how the Cal-Stereo robbery was planned and committed, with defendant playing the leading role. Defendant asserts that Kevin's statements regarding the Cal-Stereo robbery and one McDonald's robbery which represented uncharged offenses insofar as defendant was concerned were irrelevant to any issue in the instant case. It is defendant's thesis that these references by Kevin to defendant's participation in uncharged offenses were inadmissible as propensity or character trait evidence, interdicted by Evidence Code section 1101, and further, that, under Evidence Code section 352, the prejudicial impact of Kevin's statements far outweighed their probative value.

The People support the trial court's ruling admitting the tape recording of Kevin's statements on the ground that such evidence was relevant to establish the issue of "motive" under Evidence Code section 1101, subdivision (b). The main thrust of the People's argument is that

defendant had listened to this tape recording of Kevin's statements which implicated defendant with a leading role in the Cal-Stereo robbery and two McDonald's restaurant robberies, together with a commitment by Kevin to testify against defendant in the trials of these offenses. It is the People's view that the fact that defendant became aware of Kevin's plan to testify against him in trials charging defendant with serious offenses provided a motive for defendant to kill Kevin and thus preclude him from so testifying.

When the commission of the criminal *act* by a defendant is a disputed issue in an action, evidence that tends to prove that the defendant had a *motive* for committing the criminal *act* is deemed relevant evidence. "Motive" is itself a state-of-mind or state-of-emotion fact. Evidence that tends to prove "motive" meets the test of relevancy by virtue of the circumstantial-evidence-reasoning process that accepts as valid the principle that one tends to act in conformity with his state of mind or emotion.

Logically, therefore, evidence that defendant became aware of Kevin's statements that Kevin intended to testify against defendant in several serious robbery offense trials is relevant to establish a motive on the part of defendant to prevent Kevin from giving any such testimony. From the fact of such motive, it is reasonable to infer that defendant acted in conformity with that motive and killed Kevin to prevent him from testifying against defendant.

Even though Kevin's statements revealed that defendant had committed two robberies other than the one McDonald's robbery charged against defendant, " '[i]t is settled that evidence of other crimes is ordinarily admissible where it tends to show guilty knowledge, *motive, intent,* or presence of common design or plan.' " (*People* v. *Thomas* (1978) 20 Cal.3d 457, 464 [143 Cal.Rptr. 215, 573 P.2d 433].) (Italics added.) The fact that defendant had not been charged with one of the McDonald's robberies does not militate against Kevin's statements being considered relevant to establish motive, since defendant could well believe that he would be subjected to the additional charge by reason of Kevin's statements.

Certainly Evidence Code section 352 must always be considered when the evidence to establish motive consists of evidence revealing that defendant has committed an offense other than that charged in the information. The danger of undue prejudice to defendant from such

evidence is ever present because the jury may accept and use such evidence as establishing defendant's character trait or propensity to commit criminal acts and conclude therefrom that defendant committed the criminal offense charged in the information. The California Supreme Court had occasion recently in the *Thomas* case to reiterate this danger of undue prejudice by stating: "As we observed in *People* v. *Haston* (1968) 69 Cal.2d 233 [70 Cal.Rptr. 419, 444 P.2d 91], although the admission of other offenses is essentially a discretionary matter, 'that discretion must in all cases be exercised within the context of the fundamental rule that relevant evidence whose probative value is outweighed by its prejudicial effect should not be admitted.' " (*Thomas, supra,* 20 Cal.3d 457, 466-467.)

In the case at bench the trial court was careful to instruct the jury regarding the limited use of evidence of the tape-recorded statements of Kevin. The prosecution's case against defendant rested entirely on circumstantial evidence. But this circumstantial evidence was not of the weak variety. The evidence of Kevin's statements to the prosecution, made known to defendant, and which thereby established a motive for defendant to commit the offense of murder, represented a strong link in the chain of evidence connecting defendant with the offense. Its probative value, therefore, was substantial. The very essence of Evidence Code section 352 is to confer upon the trial court a broad discretion. We are unable to say that, under the circumstances presented, there was any abuse of discretion in the trial court's ruling that the probative value of the evidence of Kevin's statements was *not* substantially outweighed by any danger of undue prejudice to defendant.

## IX

*The Question of Whether the Trial Court Erred*
*in Not Giving, Sua Sponte, an Instruction on*
*the Defense of Diminished Capacity*

Although defendant's defense in the case at bench was an alibi and defendant so testified in his own defense, the contention is made that evidence was introduced to justify the giving of an instruction on diminished capacity, even though defendant made no request for such an instruction. Defendant claims that evidence was introduced to the effect that defendant had been drinking and smoking marijuana to the extent that a jury question was presented as to whether he could have formed the specific intent required for murder. The People assert that no such instruction was required because there was insufficient evidence regard-

ing diminished capacity and, also, that there is no duty on the trial court to give such instruction if it is inconsistent with some other defense raised by the defendant.

Defendant relies upon a statement contained in *People* v. *Sedeno* (1974) 10 Cal.3d 703 [112 Cal.Rptr. 1, 518 P.2d 913]. In *Sedeno,* we find the following statement contained in a footnote: "If it appears to the court, however, that there is substantial evidence that would support a defense inconsistent with that advanced by a defendant, the court should ascertain from the defendant whether he wishes instructions on the alternative theory. Such inquiry will afford assurance that the theory has not been inadvertently overlooked by counsel." (*Id.,* at p. 717, fn. 7.)

The rules are somewhat different with respect to *sua sponte* instructions depending upon whether the issue presented is that of a lesser included offense or that of a defendant's defense to the charged offense. ▮ "The obligation to instruct on lesser included offenses exists even when as a matter of trial tactics a defendant not only fails to request the instruction but expressly objects to its being given." (*Sedeno, supra,* 10 Cal.3d 703, 716; fn. omitted.) However, "[u]nlike the rule obliging the court to instruct on lesser included offenses and to give requested instructions whenever there is 'any evidence deserving of any consideration whatsoever' [citation], the duty to give instructions, *sua sponte,* on particular defenses and their relevance to the charged offense arises only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case." (*Sedeno, supra,* 10 Cal.3d 703, 716.) ▮ Unquestionably, the *Sedeno* court suggests that, if there is substantial evidence to support a defense which is inconsistent with the defendant's theory of the case, the court has an obligation to ascertain from the defendant whether he wishes instructions on the alternative theory. This obligation would apply in the case of the defense of diminished capacity.

▮ Defendant relies strongly on evidence of a conversation that took place on March 21, 1977, several months after Kevin's murder. Evidence was presented that Bonnie Krone stated to David Tohl that, on the night of the murder of Kevin, she had driven the defendant home from her house between 11 p.m. and 11:30 p.m. because the defendant had passed out from being drunk or from being asleep. However, Bonnie Krone testified and denied that she had made any such statement and also denied that she had driven defendant home on that evening. There

was some testimony that defendant had been drinking earlier in the evening and there was speculation about whether he had been smoking marijuana. We hold that this evidence was insufficient to be considered substantial evidence supportive of a defense of diminished capacity to call into play the trial court's duty to inquire of defense counsel whether he desired an instruction on diminished capacity as an alternative theory to defendant's defense of alibi. Since there was no substantial evidence to warrant giving instructions on the defense of diminished capacity, and no basis upon which the trial court could conclude that defendant was relying on such defense, and, in view of the fact that such defense is inconsistent with the alibi defense asserted by defendant, there was no error committed by the trial court in failing to give, *sua sponte,* a diminished capacity instruction.

## X

### The Question of Whether It Was Error to Consolidate the Robbery Charge With the Murder Charge and to Deny Defendant's Subsequent Motion to Sever

The robbery charge and the murder charge were consolidated over defendant's objection following a first trial for homicide which resulted in a hung jury. Subsequently, defendant's motion for a severance of the two charges was denied. Defendant asserts that both rulings of the trial court were erroneous and precluded by the provisions of Penal Code section 954. This section provides in pertinent part that "[a]n accusatory pleading may charge two or more different offenses connected together in their commission, . . . or two or more different offenses of the same class of crimes or offenses, under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated."

The argument advanced by defendant is that the McDonald's robbery in February 1976, and the subsequent murder of Kevin, occurring in December 1976, do not come within the category of "two or more different offenses connected together in their commission," or "two or more different offenses of the same class of crimes or offenses"—the only two permissible categories of joinder under Penal Code section 954 that could have any application to the case at bench.

It seems clear that robbery and murder are not offenses of the same class of crimes. The question at issue, therefore, is whether the robbery

and murder come within the concept of two different offenses "connected together in their commission." It has been held that offenses may be joined "even though they do not relate to the same transaction and were committed at different times and places and against different victims, where there is a common element of substantial importance in their commission." (*People v. Chessman* (1959) 52 Cal.2d 467, 492 [341 P.2d 679].) Thus, the key element of whether two crimes are "connected together in their commission," within the meaning of Penal Code section 954, depends upon whether there is a "common element of substantial importance among them."

In *People v. Conrad* (1973) 31 Cal.App.3d 308 [107 Cal.Rptr. 421], a defendant was charged with several robberies and one murder growing out of a robbery of different victims. The evidence established that the defendant had robbed a series of female storekeepers at knife point in order to obtain money. In holding that there was a proper joinder of offenses, the *Conrad* court stated that " '[h]ere the element of intent to feloniously obtain property runs like a single thread through the various offenses, . . .' [¶] . . . Clearly there was 'a single thread' and 'a common element of importance' in the commission of the offenses charged." (*Id.* at p. 315.) In *People v. Matson* (1974) 13 Cal.3d 35 [117 Cal.Rptr. 664, 528 P.2d 752], two offenses of rape of one victim and a burglary of the apartment of a second victim were joined. In holding that a denial of severance was appropriate, the court pointed out that the most obvious "common element of substantial importance" which justified a joinder was "the modus operandi—lying in wait for lone women leaving their apartments unlocked while making repeated trips at night to load or unload their cars." (*Id.* at p. 39.)

In *People v. Pike* (1962) 58 Cal.2d 70, 84 [22 Cal.Rptr. 664, 372 P.2d 656], a joinder of a murder count and an armed robbery count involving different victims was held proper under Penal Code section 954 on the theory that "[w]here an accusatory pleading charges separate offenses each involving the use of the same gun in their commission, the joinder has been held to be proper under section 954." In *Walker v. Superior Court* (1974) 37 Cal.App.3d 938 [112 Cal.Rptr. 767], defendant was charged in one count of an information with possession of a concealable firearm by an ex-felon and with armed robbery in count 2. The only common element of substantial importance in the two offenses was that both were accomplished by the use of a handgun, but there was no proof of the handgun being the same for each offense. The *Walker* court held that the trial court abused its discretion in not granting defendant's

motion to sever, and distinguished the *Pike* case. The *Walker* court concluded that "where two dissimilar offenses occur a significant period of time apart, are connected only by an otherwise unidentified weapon, and proof of one charge involves potentially prejudicial and otherwise inadmissible evidence on the second charge, the refusal to grant a motion to sever the charges is an abuse of discretion." (*Id.,* at p. 943.)

No case has been called to our attention which approximates the joinder of two separate offenses such as is involved in the case at bench. Here we have a robbery occurring approximately 10 months prior to the murder offense. It appears that the victim of the murder offense was initially charged as a codefendant with defendant in the prior robbery. The People's claim that robbery and murder are crimes of the same class within the meaning of Penal Code section 954 is unacceptable. However, there is a connection between the two offenses in the sense that it was the victim's cooperation with the prosecution in seeking to provide evidence against the defendant in the robbery charge that established a motive on the part of the defendant to kill the codefendant of the robbery offense. We hold that the fact that a codefendant of defendant in a robbery charge who becomes the alleged victim of the defendant in a murder offense because of his cooperation with the prosecution to incriminate the defendant in the earlier robbery charge constitutes a "common element of substantial importance" between the two separate offenses to make the two offenses properly joinable under Penal Code section 954, as "different offenses connected together in their commission."

In addition, "[b]ecause a severance motion lies within the discretion of the trial judge, denial of the motion will be disturbed on appeal only for abuse of discretion resulting in substantial prejudice to the defendant." (*Matson, supra,* 13 Cal.3d 35, 39.)

XI

*The Question of Whether Evidence of
a Tape Recording of Police Calls Was
Inadmissible Hearsay*

The trial court permitted the jury to hear tape recordings of incoming and outgoing telephone calls to the police station on the morning of Kevin's murder for the time period 1:37 a.m. through 2:07 a.m. The first call was a citizen call to the police at 1:37 a.m. and the second call was an outgoing call from police headquarters to a police unit setting forth that a

woman was screaming that shots were being fired at the Club California, Burbank and Colfax. There were other calls from police units at the scene of the killing back to police headquarters. In one of the calls it was set forth by an officer that the father of the victim or the victim had named defendant as a suspect. In overruling defendant's hearsay objection, the trial court stated that it was receiving evidence of the taped records for the *nonhearsay* purpose of fixing the times of such calls and not for the truth of anything stated in such calls.

This reasoning of the trial court is erroneous. Evidence that a call was received by police headquarters at a certain time or that at a certain time police headquarters sent out a call to one of the police units constitutes hearsay evidence by the telephone receiver and outgoing operator as to the time of the particular calls. (See *People* v. *Sundlee* (1977) 70 Cal.App.3d 477 [138 Cal.Rptr. 834].) The tape recording of the contents of incoming telephone calls to the police, and the tape recording of the contents of outgoing calls made by the police telephone operator, and the telephone operator's recording of the times of the receipt or the making of all such calls, constitute hearsay evidence since it is "evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated." (Evid. Code, § 1200; see *People* v. *Southern Cal. Edison Co.* (1976) 56 Cal.App.3d 593 [128 Cal.Rptr. 697], and *Rousseau* v. *West Coast House Movers* (1967) 256 Cal.App.2d 878 [64 Cal.Rptr. 655].) Although the trial court was incorrect in holding that the tape recording was nonhearsay evidence in fixing the times of the calls, these statements as to times of calls were properly admissible under the hearsay exception for business record entries. (Evid. Code, § 1271.) Prior to admitting the tape recording, a police officer testified and identified the tape and its mode of preparation by an employee of the police department who had a business duty to correctly set forth the content of the calls and the times of such calls.

The trial court was correct in ruling, however, that the police tape recording could not be admitted for the purpose of proving the truth of the various statements set forth by citizens who made the calls into the police department or for the truth of any calls made by police officers reciting what other persons said, such as the father of the victim or the victim naming defendant as the suspect. Under the circumstances presented, however, we do not find that defendant was prejudiced by the possibility that the jury would use the recorded statements in an

inadmissible hearsay fashion. Other admissible evidence was presented setting forth the same facts as were contained in the recorded statements.

## XII

*The Question of Whether It Was a Denial of Defendant's Constitutional Right to Due Process of Law for the Trial Court to Refuse to Permit the Defendant to Voir Dire Prospective Jurors Regarding the Standard of Proof Necessary to Sustain a Conviction*

The trial court refused to permit the defendant to voir dire the prospective jurors relative to their understanding of the standard of proof necessary to sustain a defendant's conviction. Particularly, defendant sought to inquire whether prospective jurors knew the difference in the concept of a preponderance-of-the-evidence burden of proof applicable in civil cases and that of proof-beyond-a-reasonable-doubt burden of proof applicable in criminal cases. We find no error in the trial judge's ruling refusing to permit defendant to question prospective jurors regarding their understanding of rules of law. In *People* v. *Crowe* (1973) 8 Cal.3d 815, 824 [106 Cal.Rptr. 369, 506 P.2d 193], the court set forth the limits of voir dire examination by counsel in the following language: " 'Such examination is not for the purpose of determining the exercise of peremptory challenges. . . . Neither is it a function of the examination of prospective jurors to educate the jury panel to the particular facts of the case, to compel the jurors to commit themselves to vote a particular way, to prejudice the jury for or against a particular party, to argue the case, to indoctrinate the jury, *or to instruct the jury in matters of law.*' " (Fn. omitted; italics added.) A similar statement of the limitation upon voir dire questions to prospective jurors is set forth in *People* v. *Love* (1960) 53 Cal.2d 843, 852 [3 Cal.Rptr. 665, 350 P.2d 705]: "The knowledge or ignorance of prospective jurors concerning questions of law is generally not a proper subject of inquiry on *voir dire,* for it is presumed that jurors will be adequately informed as to the applicable law by the instructions of the court." Defendant makes no complaint that the trial judge failed to adequately instruct the jury upon applicable principles of law.

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 22, 1979.