Filed 5/9/23 P. v. Simmons CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F084185 |
| Plaintiff and Respondent, | (Super. Ct. No. 21CR-03391) |
| v. | |
| YVETTE MARIE SIMMONS, | **OPINION** |
| Defendant and Appellant. | |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Merced County. Ronald W. Hansen, Judge (Retired Judge of the Merced Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.).

Jason Szydlik, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Ismah Ahmad, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Hill, P. J., Levy, J. and DeSantos, J.

Defendant Yvette Marie Simmons contends on appeal that her case must be reversed and remanded because she was prejudiced by the trial court admitting irrelevant evidence. We affirm.

## PROCEDURAL SUMMARY

On March 3, 2022, the Merced County District Attorney filed a first amended information charging defendant with receiving stolen property exceeding $950 in value (Pen. Code, § 496, subd. (a);[1] count 1); conspiracy to commit burglary (§§ 182, subd. (a)(1) & 459; count 2); and conspiracy to receive stolen property exceeding $950.00 in value (§§ 182, subd. (a)(1), 496, subd. (a); count 3).

On March 10, 2022, the jury found defendant guilty on count 1. It did not reach a verdict on either conspiracy count; the court had instructed it not to if it found defendant guilty on count 1.

On April 4, 2022, defendant was sentenced to 16 months (the low term) and denied probation.

On April 4, 2022, defendant filed a notice of appeal.

## FACTUAL SUMMARY

In May 2018, Russell M.[2] had his large musical instrument collection, consisting of about 200 items worth approximately $147,000, stored in a temperature controlled unit of a storage facility in Merced. He had a round padlock on the unit to protect the collection.

On May 12, 2018, defendant went with Ernest L. to the Merced storage facility in Ernest's van. Neither she nor Ernest rented a storage unit there. Portions of Ernest's van's rear license plate were covered with cardboard. They drove the van to the

---

[1] All statutory references are to the Penal Code unless otherwise noted.

[2] Pursuant to California Rules of Court, rule 8.90, we refer to some persons by their first names. No disrespect is intended.

second floor of the facility, where Russell's unit was located. Defendant and Ernest looked around the second floor at several of the storage units. The human resources director of the Merced storage facility testified that he found later that someone had tampered with the security camera on the second floor by turning it to face upward, away from the storage units.

The next day, May 13, 2018, Ernest and defendant returned to the Merced storage facility with defendant's van as well as Ernest's van.

On May 27, 2018, Russell went to the Merced storage facility to pick up some of the musical instruments in his collection from his unit and discovered all the contents of his unit missing. He notified the Merced Police Department of his missing musical instrument collection that day.

On June 6, 2018, Russell and the police reviewed the storage facility's surveillance footage and still photos taken from the surveillance footage. The next day, a detective also reviewed the surveillance footage. After reviewing the footage, the detective went to Ernest's residence to arrest him. He discovered both Ernest's van and defendant's van at Ernest's residence.

After the instruments were taken from Russell's unit at the Merced storage facility, Russell began to monitor online auctions to see if any of the missing musical instruments from his collection were being sold there. In July 2018, Russell discovered a user on an online auction, Charles C., selling several of Russell's missing musical instruments on the website. Police assisted Russell in retrieving those items from Charles.

The discovery of Charles on the online auction led police to a storage unit rented by Charles and a unit rented by another person, Bridget O., at a storage facility in Tracy, California.

Defendant also rented a unit at the same Tracy storage facility from approximately April 2018 until July 2018. During that time period, Ernest accessed defendant's storage unit there, and Ernest and defendant both frequented Charles's and Bridget's units.

After executing a search warrant, police located several of Russell's instruments in Bridget's unit at the Tracy storage facility. In total, Russell estimated that he recovered between 15 to 20 percent of his collection, but never recovered the remainder.

On March 4, 2022, the prosecution asked Russell, "[T]ell us about the [musical instrument] collection you had before it was taken." Russell responded with his first statement about his future plans for his collection: that he "had the intent in retirement of setting up a—kind of a non-profit studio …." Defendant objected to Russell's statement, but the trial court overruled defendant's relevance objection. Defendant preserved her challenge to the court's decision to overrule her objection.

The prosecution next asked Russell to tell the court, "more specifics about your collection." Russell responded with a second statement about his future plans for his collection, stating, "[W]ell, as I said before, you know, integrating them into this—and not really a business, but a—an enterprise where—along with collecting, which I enjoyed doing, also sharing that, you know, with my family and, you know, the younger generation." Defendant did not object to this statement.[3]

---

[3]     As a threshold matter, defendant first contends that her relevance challenge to Russell's second statement, that he intended to set up "an enterprise" with the instruments to share them with his family and the "younger generation," is cognizable on appeal because any objection to it would have been futile, as this second statement was nearly identical to his first statement, to which her objection was overruled by the court. The People do not contest this. Generally, a party must make a timely and specific objection to preserve a challenge to the admission of evidence. (Evid. Code, § 353, subd. (a); *People v. Gomez* (2018) 6 Cal.5th 243, 286.) However, " '[r]eviewing courts have traditionally excused parties for failing to raise an issue at trial where an objection would have been futile ….' " (*Gomez*, at pp. 286–287.) Accordingly, we agree with defendant that her appeal to Russell's second statement is also cognizable on appeal.

*Defense*

Defendant testified that she was at the Merced storage facility on May 12 and May 13, 2018. She stated that she was there to help Ernest "clean out a unit" because Ernest bought and sold storage units for a living.

Defendant testified that while at the Tracy storage facility with Ernest, Ernest started talking to Charles and heard he was interested in buying musical instruments. Defendant stated that Ernest then sold some instruments to Charles. Defendant testified that she peeled off the labels from boxes of musical instruments, as directed by Ernest, and helped load the instruments into Charles's car.

Defendant stated that she did not remember what was on the labels she peeled off the boxes Ernest sold to Charles and did not remember if the labels had Russell's information on them.

## DISCUSSION

### I.    Statements Not Irrelevant

Defendant contends the trial court erred in admitting Russell's statements regarding his future plans to use his collection of instruments for a "non-profit studio" and "enterprise" for the "younger generation" because they were irrelevant, and that the error prejudiced defendant. The People argue the court did not err because Russell's statements were relevant evidence, and alternatively, contend that any error was harmless. We agree with the People that the court did not err in admitting Russell's statements.

#### A.    *Law*

"No evidence is admissible except relevant evidence." (Evid. Code, § 350.)

In general, "all relevant evidence is admissible" unless excluded by law. (Evid. Code, § 351.) The relevance standard is "very broad." (*People v. Scheid* (1997) 16 Cal.4th 1, 16.) " 'Relevant evidence' means evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or

5.

disprove any disputed fact that is of consequence to the determination of the action." (Evid. Code, § 210.)

" 'A trial court has "considerable discretion" in determining the relevance of evidence.' " (*People v. Jones* (2017) 3 Cal.5th 583, 609 (*Jones*).) However, the court has no discretion to admit irrelevant evidence. (*People v. Babbitt* (1988) 45 Cal.3d 660, 681.) "[E]vidence which produces only *speculative* inferences is *irrelevant* evidence." (*People v. De La Plane* (1979) 88 Cal.App.3d 223, 242.)

The abuse of discretion standard typically applies to review of a ruling on the admissibility of evidence. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1140.) We will not reverse a court's ruling on such matters unless it is shown " 'the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Brown* (2003) 31 Cal.4th 518, 534.)

### B.    Analysis

The trial court did not abuse its discretion in ruling that Russell's statements that he "had the intent in retirement of setting up a—kind of a non-profit studio," and intended to integrate his instruments into "an enterprise" where he shared them with his family and the "younger generation," were relevant evidence to prove defendant committed the offenses with which she was charged.[4] Russell's statements were relevant to prove that he both owned the collection, and did not consent to Ernest taking it from his storage unit, which the prosecution was required to show to prove that defendant

---

**4**    We review the trial court's ruling for abuse of discretion. Defendant contends that the appropriate standard of review is de novo because the court's evidentiary ruling depended on its improper interpretation of "relevance," as used by the Evidence Code. However, the issue here is one of fact: whether the trial court properly found Russell's statements "[had] any tendency in reason to prove or disprove any disputed fact that [was] of consequence to the determination of the action" (Evid. Code, § 210). Accordingly, the proper standard of review is abuse of discretion.

committed the offenses of receiving stolen property (§ 496, subd. (a)) and conspiring to receive stolen property (§§ 182, 496, subd. (a)).

Here, the prosecution had the burden of proving defendant committed the charged offenses. For both the offense of receiving stolen property (§ 496, subd. (a)) and the offense of conspiring to receive stolen property (§§ 182, 496, subd. (a)), it had to prove that she received stolen property. To prove she received stolen property, the prosecution had to prove that the property was stolen. To do this, it had to prove the property belonged to Russell, and that Ernest took the property without Russell's consent. Russell's two statements about his future plans for his collection both have a tendency in reason to prove that Russell owned the collection taken from his storage unit, and that he did not consent to Ernest taking it. It stands to reason that someone who owns property and has future plans for its use—such as Russell's plan to keep the instruments for a future "enterprise" where he loaned instruments out to friends and created a "non-profit studio"—would not consent to someone taking it. Accordingly, the trial court did not abuse its discretion by admitting Russell's statements about his future plans for the collection as relevant to proving Russell owned the collection and did not consent to Ernest taking it.

Defendant contends that the trial court erroneously admitted Russell's statements because the only "critical factual issue" at trial for each of defendant's charged offenses was "what [defendant] knew at the time": for the charge of receiving stolen property and conspiracy to receive stolen property, she argues the critical factual issue was whether defendant " 'knew that the property had been stolen' "; and for conspiracy to commit burglary, she argues the critical factual issue was whether defendant " 'knew Ernest … intended to commit theft.' " Accordingly, defendant contends, Russell's statements about his future plans for his collection did not " 'hav[e] any tendency in reason to prove any disputed fact that [was] of consequence to the determination of the action,' " because Russell's testimony about his future plans does not prove that defendant " 'knew that the

7.

property had been stolen' " or that Ernest intended to commit theft. (§§ 459, 496, subd. (a); Evid. Code, § 210.)

However, the prosecution was required to prove all the elements of defendant's charged offenses. A " 'defendant's plea [of not guilty] does put the elements of the crime in issue for the purpose of deciding the admissibility of evidence … unless the defendant has taken some action to narrow the prosecution's burden of proof.' " (*People v. Ewoldt* (1994) 7 Cal.4th 380, 400, fn. 4.) In addition, "the prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense." (*Estelle v. McGuire* (1991) 502 U.S. 62, 69.) Defendant's tactical decision not to contest Russell's ownership of the collection or whether he consented to Ernest taking it did not narrow the prosecution's burden of proof. Accordingly, the prosecution was still required to prove these facts to meet its burden of proof as to all the elements of defendant's charged offenses.

Defendant next argues that Russell's statements about his future plans for his collection are too speculative and too attenuated from the elements of her charged offenses " 'to prove any disputed fact that is of consequence to the determination of the action.' " However, " ' "[c]ircumstantial evidence involves a two-step process—first, the parties present evidence and, second, the jury decides which reasonable inference or inferences, if any, to draw from the evidence." ' " (*Jones*, *supra*, 3 Cal. 5th at p. 610.) Furthermore, the trial court has " ' "considerable discretion" ' " in determining the relevancy of evidence. (*Id*. at p. 609.) Here, the court could reasonably have inferred that Russell's future plans showed he owned the collection and did not consent to Ernest taking it from his storage unit. The meaning of Russell's statements about his future plans for the collection was not speculative, nor too attenuated from the elements of the charges, merely because inferences were required to find that Russell's statements showed he owned the collection and did not consent to Ernest taking it. Accordingly, it

was within the court's " ' "considerable discretion" ' " to find that Russell's statements were relevant to proving defendant committed the charged offenses. (*Id*. at p. 609)

As the trial court's admission of Russell's statements about his future plans for his musical instrument collection was not arbitrary, capricious, or patently absurd resulting in a manifest miscarriage of justice, we conclude that the court did not err by admitting Russell's statements as relevant to proving the elements of defendant's charged offenses.

## II.     Harmless Error

Defendant further contends there is a " '*reasonable chance*, more than an *abstract possibility*,' " that at least one juror would not have found the knowledge element for any of the offenses had the trial court not admitted the statements at issue. He argues the statements caused the jury to sympathize with Russell, "transform[ing] his private loss into the entire community's loss," and that the jury's seven-hour deliberation shows that this was not a "simple case" for the jury. As discussed above, we conclude that the statements were relevant to show Russell owned the property and did not consent to Ernest taking it. However, assuming the statements were irrelevant, any error is harmless and defendant is not prejudiced. It is not reasonably probable that a result more favorable to defendant would have been reached in the absence of Russell's statements about his future plans for the collection. "It is … well settled that the erroneous admission or exclusion of evidence does not require reversal except where the error or errors caused a miscarriage of justice. (Evid. Code, §§ 353, subd. (b), 354.) '[A] "miscarriage of justice" should be declared only when the court, "after an examination of the entire cause, including the evidence," is of the "opinion" that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error.' " (*People v. Richardson* (2008) 43 Cal.4th 959, 1001; *People v. Watson* (1956) 46 Cal.2d 818, 836.) Reasonably probable "does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*." (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715.) "[A] hung jury is a more favorable result

9.

than a guilty verdict." (*People v. Soojian* (2010) 190 Cal.App.4th 491, 520.)  Here, ample evidence on the record, including video evidence that the jury reviewed during their seven-hour deliberation, supports the jury's findings against defendant.  Further, the trial court instructed the jury, " '[y]ou must not let bias, sympathy, prejudice, or public opinion influence your assessment of the evidence or your decision,' " and " '[y]ou must follow the law as I explain it to you even if you disagree with it.' "  Juries are presumed to follow the court's instructions.  (*People v. Boyette* (2002) 29 Cal.4th 381, 436.)  There is no evidence on the record to support defendant's contention that the jury failed to follow these instructions, and there is no evidence to support defendant's speculation that the jury deliberated for seven hours because the statements at issue caused it to sympathize with Russell.  Accordingly, regardless of whether the statements were relevant, we conclude defendant was not prejudiced because any error was harmless.

## DISPOSITION

The judgment is affirmed.

10.