[No. H020651. Sixth Dist. Oct. 31, 2001.]

THE OAKLAND RAIDERS, Plaintiff and Appellant, v.
NATIONAL FOOTBALL LEAGUE et al., Defendants and Respondents.

---

## COUNSEL

Jeffrey Birren; Alioto Law Firm, Joseph M. Alioto; Howard, Rice, Nemerovski, Canady, Falk & Rabkin, Alison Beth Shames, Jerome B. Falk, Jr., Kenneth G. Hausman, Annette L. Hurst and Simon J. Frankel for Plaintiff and Appellant.

McCutchen, Doyle, Brown & Enersen, Dale E. Barnes, James L. Hunt, Michael T. Pyle, John W. Calkins; Ruby & Schofield, Allen J. Ruby; Lewis, D'Amato, Brisbois & Bisgaard and Duane C. Musfelt for Defendants and Respondents.

## OPINION

**PREMO, Acting P. J.**—The Oakland Raiders (hereafter Raiders) football club has sued the National Football League (hereafter NFL), 16 NFL clubs, and many other NFL-related persons and entities, generally alleging that NFL leadership has been marked by abuse of power, neglect of duties, mismanagement, discriminatory rule enforcement, inappropriate favoritism, and back room dealmaking which has resulted in damage to the Raiders.[1] The fourth amended and supplemental complaint alleges 22 causes of action.

---

[1]The club defendants are: The Five Smiths, Inc. (Atlanta Falcons); B&B Holdings, Inc. (Arizona Cardinals); Buffalo Bills, Inc.; Chicago Bears Football Club, Inc.; Baltimore Ravens Football Club, Inc.; F/K/A Cleveland Browns Football Co.; PDB Sports, Inc. (Denver Broncos); Houston Oilers, Inc.; Kansas City Chiefs Football Club, Inc.; Minnesota Vikings Football Club, Inc.; New Orleans Louisiana Saints, L.P.; New York Football Giants, Inc.; New York Jets Football Club, Inc.; Pittsburgh Steelers Sports, Inc.; San Francisco Forty-Niners, Ltd.; Seattle Seahawks, Inc.; and Pro-Football, Inc. (Washington Redskins).

The person or entity defendants are: NFL Commissioner Paul Tagliabue; NFL President Neil Austrian; National Football League Properties, Inc. (hereafter NFLP); The World League of American Football (hereafter World League); The World League of American Football, Inc. (hereafter World League, Inc.); The World League of American Football, L.P. (hereafter World League, L.P.); National Football League Enterprises, L.P. (hereafter Enterprises, L.P.);

Defendants made several successful motions for summary adjudication. Because the orders disposed of all causes of action against the club defendants, Austrian, and all but two of the entity defendants,[2] the trial court entered judgment as to those defendants. The Raiders appeals, and we affirm the judgment.

## APPEALABILITY

Preliminarily, the Raiders urges that this appeal should be dismissed because the trial court had no authority to enter a piecemeal judgment. It acknowledges that Code of Civil Procedure section 579 gives a trial court discretion to render judgment against one defendant and allow the action to proceed against other defendants whenever a several judgment is proper.[3] But it argues that the statute authorizes such a judgment only against a defendant not, as here, in favor of a defendant. It adds that a several judgment is not proper when all defendants are indispensable parties. We disagree.

Despite the language of Code of Civil Procedure section 579 (judgment may be entered "against" one or more defendants), the section has been consistently construed as authorizing entry of judgment in favor of one or more defendants. In *Justus v. Atchison* (1977) 19 Cal.3d 564, 568 [139 Cal.Rptr. 97, 565 P.2d 122], the court ruled that judgments of dismissal on orders sustaining demurrers to certain causes of action were properly entered in favor of the defendants, when "[t]he judgments . . . disposed . . . of all the causes of action in which the husbands are plaintiffs." That the plaintiff wives remained in the case is a "circumstance [that] does not affect the reason for the exception [to the one final judgment rule], i.e., that it better serves the interests of justice to afford prompt appellate review to a party whose rights or liabilities have been definitively adjudicated than to require him to await the final outcome of trial proceedings which are of no further concern to him." (*Ibid.*) Similarly, in *Estate of Gonzalez* (1990) 219 Cal.App.3d 1598, 1601-1602 [269 Cal.Rptr. 68], we stated that, "It is well

National Football League Enterprises, Inc. (hereafter Enterprises, Inc.); and Management Compensation Group.

The Raiders is used herein as the name of a business entity and therefore is associated with singular verbs.

[2]The World League obtained judgment but World League, Inc., and World League, L.P. did not. The complaint alleges that World League, Inc., and World League, L.P. were Delaware entities that operated the "old" World League, a European football league that terminated in 1992. It then states that references to "World League" pertain to both the "old" World League and the "new" World League currently operated by the World League.

[3]Code of Civil Procedure section 579 provides that "In an action against several defendants, the Court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others, whenever a several judgment is proper."

settled that where, as here, there is a judgment resolving *all* issues between a plaintiff and one defendant, then either party may appeal from an adverse judgment, even though the action remains pending between the plaintiff and other defendants."

Moreover, Code of Civil Procedure section 579 is preceded by section 578, which states, "Judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants; and it may, when the justice of the case requires it, determine the ultimate rights of the parties on each side, as between themselves." This section has been construed to mean that "judgment may be given for or against one or more of several defendants." (*Martin v. Cinelli* (1960) 183 Cal.App.2d 509, 512 [7 Cal.Rptr. 62].) Thus, there is ample authority for the proposition that the trial court, in its discretion, may enter judgment in favor of one or more defendants when all issues between those defendants and the plaintiff have been adjudicated, even though the action remains pending against those defendants who have not obtained adjudication of all issues.

Here, the parties agree that all issues between the Raiders and defendants have been resolved by way of summary adjudication orders. Therefore, the trial court had the discretion to render judgment in defendants' favor, pursuant to the exception to the one final judgment rule that is codified at Code of Civil Procedure sections 578 and 579.

We also reject the point that entry of judgment in favor of defendants was improper because they are indispensable parties whose interests are identical to those of the remaining defendants. (*Tinsley v. Palo Alto Unified School Dist.* (1979) 91 Cal.App.3d 871, 881 [154 Cal.Rptr. 591] (*Tinsley*).)

In *Tinsley*, the respondents asserted that the one final judgment rule must be applied to defeat the appeal because the interests of the respondents and a remaining defendant were identical. According to the respondents, the judgment could not be a complete determination of the matter. The court acknowledged one United States Supreme Court authority that had ruled that such a decree was nonappealable. (See *Hohorst v. Hamburg-American Packet Co.* (1893) 148 U.S. 262 [13 S.Ct. 590, 37 L.Ed. 443].) But it observed that the Supreme Court had applied the prevailing federal rule, apparently predicated upon the common law. It held: "The federal common law rule cannot control the statutes of this state." (*Tinsley, supra,* 91 Cal.App.3d at p. 881.)

### BACKGROUND

This matter arises from the complex web of for-profit and nonprofit organizations that carry out the business of the NFL, an unincorporated nonprofit association of 30 (now 31) football clubs, including the Raiders.

The NFL is governed by a constitution that generally requires a three-quarters vote for action. The chief executive officer is the commissioner, who is appointed by a two-thirds vote of the clubs. (Tagliabue has been the commissioner at all relevant times.) The commissioner appoints other officers such as the president. (Austrian has been the president at all relevant times.)

The NFLP is a California corporation that markets the NFL's commercial interests. The clubs own the corporation in equal shares. The board of directors consists of one director appointed by each club. Action generally requires a majority vote. Tagliabue manages the NFLP pursuant to an NFL resolution.

Enterprises, L.P. is a Delaware limited partnership that manages satellite television broadcasts of NFL games. The limited partners are the clubs. The general partner is Enterprises, Inc., a Delaware corporation that is owned by the clubs in equal shares. Enterprises, Inc., also manages the World League. Its board of directors consists of six club owners. Action requires a majority vote. Tagliabue manages Enterprises, L.P. and Enterprises, Inc.

The World League is a joint venture between Enterprises, L.P. (51 percent) and Fox, Inc. (49 percent). It operates a European football league known as NFL Europe. Its board of directors consists of four club representatives and four Fox representatives.

Management Compensation Group is not affiliated with the NFL.

The Raiders generally alleges that Tagliabue has wrongfully used his position to control a majority of the clubs so that his management of the web cannot be evaluated by independent business judgment. For example, the Raiders claims that Tagliabue permits certain clubs to operate in violation of the NFL's constitution and appoints certain clubs to key committees; in return for these favors, so the argument goes, the clubs give Tagliabue unquestioned allegiance and obedience. The other side of this coin, according to the Raiders, is that Tagliabue uses his control to treat it adversely because of antagonism stemming, in part, from nine years of litigation between the Raiders and the NFL during the 1980's.

There are 11 causes of action at issue in this appeal.

The first cause of action is a direct claim for breach of contract against the NFL and the club defendants, which essentially asserts that the operation of NFL Europe is contrary to the NFL's constitution.

The third, fourth, fifth, and sixth causes of action are derivative claims against Tagliabue and Austrian on behalf of the NFL, Enterprises L.P., and Enterprises, Inc. (and on behalf of the World League as to the fourth cause of action) concerning the management of the World League. The eighth and ninth causes of action are derivative claims against Tagliabue and Austrian on behalf of the NFL and the NFLP concerning the management of the NFLP. The 10th and 11th causes of action are derivative claims against Tagliabue and Austrian (and Management Compensation Group as to the 11th cause of action) on behalf of the NFL, the NFLP, Enterprises L.P., and Enterprises, Inc., concerning the management of two employee benefit plans. The seventh and 16th causes of action seek accountings and are ancillary to the derivative causes of action.

In the summary judgment proceedings, as to the breach of contract cause of action, the trial court found against the Raiders because of the abstention principle that courts should not interfere in intra-association disputes. (*California Dental Assn. v. American Dental Assn.* (1979) 23 Cal.3d 346 [152 Cal.Rptr. 546, 590 P.2d 401] (*California Dental*).)

Concerning the 10 derivative causes of action, the Raiders alleged that making a demand upon the derivative entities to sue Tagliabue and Austrian would have been futile because the entities were dominated by Tagliabue and Austrian and thus lacked independent business judgment.[4] As to these causes of action, the trial court found against the Raiders because it determined that (1) defendants had presented sufficient evidence to show that demand would not have been futile, and (2) the Raiders had failed to produce evidence that demand would have been futile.

After the trial court's ruling but before judgment, the Raiders made a demand on the boards of the NFL, the NFLP, and Enterprises, Inc., to investigate the claims against Tagliabue, Austrian, and Management Compensation Group that were made in the 10th and 11th causes of action.

SCOPE OF REVIEW

■ "Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law. (Code Civ. Proc., § 437c,

---

[4]Corporations Code section 800, subdivision (b)(2), provides that no action may be instituted or maintained in the right of a corporation or unincorporated association by a shareholder or member unless "The plaintiff alleges in the complaint with particularity plaintiff's efforts to secure from the board [or managing body] such action as plaintiff desires, or the reasons for not making such effort, and alleges further that plaintiff has either informed the corporation [or association] or the board [or managing body] in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation [or association] or board [or managing body] a true copy of the complaint which plaintiff proposes to file."

subd. (c).) In reviewing an order granting summary judgment, we must assume the role of the trial court and redetermine the merits of the motion. In doing so, we must strictly scrutinize the moving party's papers. [Citation.] The declarations of the party opposing summary judgment, however, are liberally construed to determine the existence of triable issues of fact. [Citation.] All doubts as to whether any material, triable issues of fact exist are to be resolved in favor of the party opposing summary judgment. [Citation.] [¶] While the appellate court must review a summary judgment motion by the same standards as the trial court, it must independently determine as a matter of law the construction and effect of the facts presented." (*Barber v. Marina Sailing, Inc.* (1995) 36 Cal.App.4th 558, 562 [42 Cal.Rptr.2d 697].)

■ A defendant moving for summary judgment meets his burden of persuasion showing that there is no merit to a cause of action if that party has shown that one or more elements of the cause of action cannot be established or that there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (*o*)(2).) Once the defendant does so, the burden shifts back to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or to a defense to the cause of action. In doing so, the plaintiff cannot rely on the mere allegations or denial of his pleadings, "but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . ." (*Ibid.*; see *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849 [26 Cal.4th 80a, 107 Cal.Rptr.2d 841, 24 P.3d 493].)

ABSTENTION DOCTRINE

■ The rights and duties of members of a private voluntary association, between themselves and in their relation to the association, are measured by the terms of the association's constitution and bylaws. (*California Dental, supra,* 23 Cal.3d at p. 353.) In *California Dental,* the court held that "when a private voluntary organization plainly contravenes the terms of its bylaws, the issues of whether and to what extent judicial relief will be available depend on balancing (1) the interest in protecting the aggrieved party's rights against (2) the infringement on the organization's autonomy and the burdens on the courts that will result from judicial attempts to settle such internal disputes." (*Id.* at p. 350.) ■ But the court also noted that "In many disputes in which [the rights and duties of the membership in relation to the association] are at issue . . . the courts may decline to exercise jurisdiction. Their determination not to intervene reflects their judgment that the resulting burdens on the judiciary outweigh the interests of the parties at stake. One concern in such cases is that judicial attempts to construe ritual or

obscure rules and laws of private organizations may lead the courts into what Professor Chafee called the 'dismal swamp.' " (*Id.* at p. 353.) The court held that the initial question in determining whether judicial action is appropriate is whether the challenged action "plainly contravenes" the association's bylaws. Only then does the balancing test noted above come into play. (*Id.* at p. 354.) The court undertook to intercede in the case in question only after observing that the case was "not one in which the [parties] are engaged in a dispute concerning the *interpretation* of [their] bylaws. If it were, the interests of the [American Dental Association] in autonomy and the burdens on the courts that might result from attempting to resolve such disputes would be strong considerations militating against judicial review." (*Id.* at p. 355, fn. 3.)

The NFL's constitution provides that (1) the purpose of the league is to promote and foster the primary business of league members who are owners of professional football clubs located in the United States, (2) no member of the league shall own any interest in a professional football team not a member of the league, and (3) no member shall own a financial interest in a minor league club.

The Raiders objects to being compelled to participate in NFL Europe. It takes the position a European football league falls outside the purposes of the NFL, the European teams are not members of the NFL, and the European teams are minor league teams. The other perspective is that the promotion and fostering of league-member business is an open-ended concept and the other-team-ownership prohibitions can be interpreted as conflict-of-interest prohibitions that apply to individual clubs rather than the clubs' collective ownership of all of the European teams.

The Raiders tacitly accepts that the NFL has rejected its interpretation of the constitution and embraced the European football league. And it tacitly accepts that the operation of NFL Europe does not plainly contravene the constitution. It simply contends that *California Dental* does not apply and the California courts should intercede in its dispute.

The Raiders urges as follows: "In *California Dental,* the issue was whether the trial court should have abstained from ruling on requests to review decisions of a disinterested quasi-judicial tribunal established by an association to resolve disputes between members or components of the association. The few California decisions applying *California Dental* have arisen in this narrow context. The NFL and its entities have no such quasi-judicial process for the resolution of the issues raised by the Raiders. The actions challenged by the Raiders are those of the NFL itself. The NFL board is not disinterested; its own acts are at the heart of the controversy. No disinterested body

is available to consider the Raiders' claims that the NFL has breached its Constitution and Bylaws. Were the principle of *California Dental* extended to a case such as this, then numerous cases concerning unincorporated associations issued have been wrongly decided. Indeed, no published decision of a California court has applied the doctrine of *California Dental* to an ordinary tort or contract action at law for damages against an association that did not seek review of a disinterested quasi-judicial decision of a tribunal established by the association."

In *California Dental*, the California Dental Association (California), a constituent society chartered by the American Dental Association (American), held a hearing and expelled a dentist for violations of its code of ethics and the ethics of American. The dentist appealed to American, which reversed without reference to California's code of ethics. California filed a petition for writ of mandate challenging the reversal. The trial court granted the petition and ordered American to rehear the dentist's appeal on the ground that California had higher ethical standards, American's bylaws allowed California to have higher ethical standards, and American had failed to consider California's higher standards. The court affirmed.

It is true that *California Dental* framed the issue before it as follows: "The question presented is whether the constituent organization can obtain judicial review of the adjudicatory decision by its parent when the latter assertedly failed to comply with its own bylaws." (*California Dental, supra,* 23 Cal.3d at p. 350.) But the case nowhere states that abstention was limited to situations wherein one sought judicial review of the decision of a neutral quasi-judicial body. To the contrary, the case language applies broadly: "We conclude that when a private voluntary organization plainly contravenes the terms of its bylaws, the issues of whether and to what extent judicial relief will be available depend on [the balancing factors]." (*Ibid.*) The case then stated that the threshold question in determining whether judicial action is appropriate was whether the challenged action "plainly contravenes" the association's bylaws. It undertook review in the case only because the challenged action plainly contravened the association's bylaws.

More importantly, however, the Raiders simply misreads the court's statement of the issue before it. As the context makes clear, the court was not reviewing an adjudicatory decision of an association, which might imply that the abstention principles discussed in the case apply only to adjudicatory decisions. It was reviewing whether American plainly contravened its bylaws by deciding the dentist's appeal without regard to California's code of ethics. The court specifically articulates this concept: "[California] asserts [the concern that American comply with its own bylaws] not as a subordinate adjudicatory body that has been reversed on appeal, but as a representative of the aggregate interests of its members. Whether such an interest is

judicially cognizable depends not on our cases applying principles of 'fair procedure,' but on the more general common law principles that govern disputes within private organizations." (*California Dental, supra,* 23 Cal.3d at p. 353.)

In short, *California Dental* was not a quasi-judicial case, did not limit itself to quasi-judicial cases, and affirmatively stated that it was applying general common law that governed disputes within private organizations. *California Dental* and the general common law manifestly apply to this case.

In a related issue, the Raiders argues that the trial court erred by ruling that issues regarding Tagliabue's failure to observe the 1993 Resolution IC-1 (generally authorizing the development of a business plan to operate an international league) were not pleaded in the first cause of action. They appear to alternatively argue that the trial court abused its discretion by denying leave to amend the first cause of action to allege that operation of the World League violated the NFL's bylaws (generally stating that each member club agrees to be bound by and observe all decisions, rulings, and actions of the executive committee).

The Raiders' first point seems to concern a claim against Tagliabue and Austrian, which would be derivative in nature. It is therefore governed by our analysis of the derivative issues in the next portion of this opinion. The Raiders' second point seems to concern a proposed cause of action against the NFL and club defendants. But operation of the World League does not plainly contravene the cited general bylaw. The abstention doctrine therefore applies.

## DEMAND FUTILITY

The Raiders preliminarily contends that the "demand futility rule" is a pleading requirement that drops out of the case once a derivative suit survives a demurrer. It points out that Corporations Code section 800, subdivision (b)(2) (*ante,* fn. 4) only requires *allegations* of demand futility. It elaborates as follows: "Although in most cases the plaintiff must eventually prove what it has alleged, a derivative claim premised on demand futility is different because the sufficiency of the allegations determines whether the shareholders or the directors are to have control over the litigation, and there are mechanisms (other than summary judgment) for the corporation to gain control of the litigation after the cases pass the demurrer stage." It continues: "The test for demand futility serves to identify—at an early stage—the cases in which control of litigation brought in the name of the corporation against a third party *should* be in the hands of the shareholder rather than the board

of directors; thus, it is a threshold requirement, it does not implicate the merits of the complaint against the third-party defendant, and it drops out of the case once the court finds that demand is excused. To require the plaintiff to prove—and not just plead—a case for demand futility would needlessly increase the burdens of conducting derivative shareholder litigation brought to assert rights of the corporation against a third party by opening the door to discovery and contested fact litigation over a collateral issue—whether demand was *really* futile—without any real benefit to the corporation or the judicial process." It concludes that there is no benefit to the corporation in allowing the demand futility issue to be litigated because the corporation can move to take control of the suit as a plaintiff if it believes the suit has merit or appoint a special litigation committee of disinterested directors to investigate the allegations and move to dismiss the suit if the committee so recommends. In either case, the Raiders asserts, the focus before the court will be on the merits of the suit rather than a collateral issue: "In other words, where a shareholder has successfully invoked the demand futility exception, the board of directors continues to hold the keys to the courthouse. It is fully empowered to trigger an evaluation of the merits of the claims against the third-party defendant and the wisdom of asserting those claims. If a board of directors fails to take advantage of that opportunity and declines to appoint a special litigation committee to conduct an impartial evaluation of those claims—even though it knows that the court would evaluate any conclusion the board reached under the deferential business judgment standard—why shouldn't the shareholder derivative suit be allowed to continue?"

The above argument has a superficial appeal. However, as acknowledged by the Raiders, it places the demand futility requirement outside the general rule that a plaintiff must prove what it pleads. Though there is nothing inherently wrong with exceptions to general rules, the Raiders advances its proposition without supporting authority. Each case cited by the Raiders is a pleading case. None state that demand futility need not be proved. And cases support the notion that demand futility is within the general rule.

In *Glidden v. Diamond 66 Cattle etc. Co.* (1918) 178 Cal. 562 [174 P. 667], the trial court granted a motion for nonsuit in a derivative action on the ground that the corporation had previously commenced a suit against the same defendants in which the same relief was sought. The court reversed the judgment because it found that the two suits were not similar. But, in supposing that nonsuit would have been proper had the two suits been similar, the court offered the following: "for, aside from the matter of pleading, the plaintiff was bound to prove his right to maintain his action on behalf of the corporation by showing that the corporation had itself failed, refused, or neglected to take the necessary steps for the protection of the interests of itself and its stockholders . . . ." (*Id.* at p. 565.)

In *Good v. Getty Oil Co.* (Del.Ch. 1986) 518 A.2d 973,[5] two Texaco, Inc. stockholders filed a derivative suit against Getty Oil Company. Texaco moved to dismiss and asked permission to establish a factual record in support of the motion. It then petitioned to certify to the Delaware Supreme Court the question whether demand futility must be measured against the allegations of the derivative complaint or whether a factual record could be established to disprove the demand futility allegation. The trial court denied the petition after concluding that nothing in Delaware law precluded Texaco from factually resolving the demand futility issue in a context other than a motion to dismiss. It held: "It is recognized that the principle which requires that management retain control over corporate claims except where conditions of director disqualification exist . . . is a substantive matter. [Citation.] Therefore, its ultimate consideration does not end when the complaint is found to be sufficient. It may be raised as a fact issue to be resolved in a variety of ways thereafter." (*Id.* at p. 975.)

A recent Maryland case is in accord, directly on point with this case, and convincing.

In *Werbowsky v. Collomb* (2001) 362 Md. 581 [766 A.2d 123], derivative plaintiff stockholders appealed from a judgment following a grant of summary judgment to the defendants based on the demand futility issue. They complained that it was error for the trial court to decide demand futility on summary judgment after the trial court had concluded that the complaint had sufficiently alleged demand futility. The court disagreed and explained: "Although the issue of demand futility is often raised and decided in the context of a motion to dismiss, based on the allegations of the complaint [citation], there is no requirement that the issue be resolved in that context. [Citations.] Obviously, if the complaint fails to allege sufficient facts which, if true, would demonstrate the futility of a demand, it is entirely appropriate to terminate the action on a motion to dismiss. But the issue is not foreclosed simply because the complaint is sufficient. Plaintiffs can allege most anything, and, if the court were bound to consider only the allegations of the complaint, the futility exception would swallow in one gulp the demand requirement. The futility issue may be resolved as a factual matter." (*Id.* at p. 145.)

We therefore reject the Raiders' contention that the trial court erred by considering demand futility as an element of the derivative claims that is subject to proof.

---

[5]The parties agree that we may properly rely on corporate law developed in the State of Delaware given that it is identical to California corporate law for all practical purposes. (See *Shields v. Singleton* (1993) 15 Cal.App.4th 1611, 1621 [19 Cal.Rptr.2d 459].)

The Raiders alternatively contends that it raised a triable issue of fact as to demand futility in several different ways.[6]

■ The test for proving demand futility is whether the facts show a reasonable doubt that (1) the directors are disinterested and independent, and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment. (*Aronson v. Lewis* (Del. 1984) 473 A.2d 805, 814.) But general, conclusory facts are insufficient. (*Shields v. Singleton, supra*, 15 Cal.App.4th at p. 1622.) And facts relating to the structural bias common to corporate boards throughout America are also insufficient. (*Aronson v. Lewis, supra*, 473 A.2d at p. 815, fn. 8; cf. *Kaplan v. Wyatt* (Del. 1985) 499 A.2d 1184, 1189-1190 [allegations of natural bias not supported by tangible evidence of an interest on the part of a special litigation committee in the outcome of the litigation do not demonstrate a lack of independence].) The proof must be of "facts specific to each director from which [the trier of fact] can [find a reasonable doubt] that that particular director could or could not be expected to fairly evaluate the claims of the shareholder plaintiff." (*Shields v. Singleton, supra*, 15 Cal.App.4th at p. 1622; see also *Aronson v. Lewis, supra*, 473 A.2d at p. 815, fn. 8 ["specific facts pointing to bias on a particular board will be sufficient for determining demand futility"].)

A significant part of the Raiders' argument essentially disagrees with the specific-fact requirement and urges that structural bias is sufficient to raise an inference of demand futility. According to the Raiders, the evidence showing the extraordinary influence of the commissioner and president over the NFL and the NFL entities shows the structural bias and therefore demand futility. In a similar argument that the Raiders urges shows specific facts, the Raiders argues that certain individual clubs were disabled from exercising independent judgment because those clubs needed favorable treatment from the commissioner concerning NFL rule interpretations.

The argument appears to be a non sequitur, however. This follows because the structure does not permit the commissioner to control the clubs; the commissioner is a nonshareholder officer who serves at the pleasure of the directors (clubs). In short, any structural bias stemming from the influence of the commissioner and his appointees naturally flows from the consent of the clubs.

In any event, the Raiders cites several cases in support of its position.

In *Clark v. Lomas & Nettleton Financial Corp.* (5th Cir. 1980) 625 F.2d 49 (*Clark*), the court reversed an order approving the settlement of a derivative

---

[6]The Raiders does not dispute that defendants' showing negated the demand futility element. We therefore do not examine the showing in support of the motion except insofar as it may be relevant to the discussion.

suit in which the corporation's board of directors settled the suit without the shareholder plaintiffs' knowledge. This occurred after the trial court allowed an amended complaint naming Jack Booth as a defendant and thereafter denied Booth's motion to dismiss. Booth was the corporation's principal director and president. He owned 45 percent of the stock. Lomas, the principal defendant in the derivative suit, owned 11 percent of the stock. Booth did not vote on the settlement. But the six remaining directors of the corporation were elected by the combined vote of Booth and Lomas. And a majority of the six were insiders. The court noted that Booth wielded power to strip the other directors of their positions as directors, officers, and consultants. And it observed that demand futility (board lack of independence) is presumed when the controlling shareholder is named a defendant. In this context, the court remarked: "Nor can we ignore the possibility of 'structural bias' in this case . . . suggested by [the corporation's] sudden, hostile reaction to . . . Booth's joinder." (*Id.* at p. 53.)

Thus, *Clark* addresses the bias that exists when a controlling shareholder, who necessarily controls the board of directors, is sued in a derivative action. That is not the case here. Tagliabue is not a shareholder.

In *Grobow v. Perot* (Del. 1988) 539 A.2d 180, the trial court dismissed a derivative suit for failure to sufficiently plead demand futility. On appeal, the plaintiff advanced the theory that it had alleged a reasonable doubt as to director disinterest based on "entrenchment." We glean from the opinion that entrenchment, in this context, refers to the concept where the directors' action that is challenged by the shareholder plaintiff was motivated by and reasonably related to the directors' retention of their positions on the board. (*Id.* at p. 188.)

Entrenchment is inapplicable to this case because the Raiders does not challenge director (club) action that was motivated by and reasonably related to the directors' retention of their positions. Rather, it challenges officer action.

In *Koshaba v. Koshaba* (1942) 56 Cal.App.2d 302 [132 P.2d 854] (*Koshaba*), the trial court rendered a judgment in a derivative suit removing George Koshaba as a director for misappropriating money. On appeal, Koshaba contended that the complaint failed to state a cause of action because, although the plaintiff had alleged that he had made a demand to sue on the board, the plaintiff had not alleged that the board refused the demand. The court disagreed because the complaint had alleged, and the trial court had found true, facts of such a nature as to demonstrate that the demand was futile. One fact was that Koshaba dominated and controlled the other

members of the board such that the other members had ceased to function as directors. (*Id.* at p. 308.)

*Koshaba* is simply another example of the fact pattern in which one director has corporate control by virtue of share ownership. Again, Tagliabue is neither a director nor a shareholder.

*Zapata Corp. v. Maldonado* (Del. 1981) 430 A.2d 779 [22 A.L.R.4th 1190], is patently not on point. There the court simply recognized that Delaware law allows corporations to respond to a derivative suit by appointing independent directors to a special litigation committee, which will then investigate the merits of the suit and thereafter recommend pursuing the case as a plaintiff or seeking dismissal of the case. In this context, the court noted that it was mindful that the committee of directors would be passing judgment on fellow directors (at least where the fellow directors are defendants in the derivative action); and it questioned whether inquiry as to the independence, good faith and reasonable investigation of the committee directors was sufficient to safeguard against abuse or subconscious abuse. It then fashioned a rule that, when a corporation moves to dismiss a derivative suit based on the business judgment recommendation of a special litigation committee, the court (1) should inquire into the independence and good faith of the committee, and, if it finds independence and good faith, (2) may, in its discretion, apply its own business judgment before granting or denying the motion. (*Id.* at pp. 788-789.)

*Miller v. Register and Tribune Syndicate, Inc.* (Iowa 1983) 336 N.W.2d 709, is another special litigation committee case where the issue involved the potential for structural bias of the committee where the committee is appointed by directors who were defendants in the derivative suit. (*Id.* at p. 718.)

And finally, *Blasband v. Rales* (3d Cir. 1992) 971 F.2d 1034, a pleading case similar to *Clark* and *Koshaba*, merely affirms the rule that lack of independence can be pleaded by facts showing that the board is under a controlling influence such that its discretion is sterilized. (*Id.* at p. 1048.)

In short, none of the cases cited by the Raiders support that demand futility can be shown by evidence of a structural bias in lieu of facts, specific to each director, from which the trier of fact could conclude that a particular director could or could not be expected to fairly evaluate the claims of the shareholder plaintiff. (*Shields v. Singleton, supra,* 15 Cal.App.4th at p. 1622.) To the extent that the cases cited by the Raiders support the notion that a controlling shareholder could dominate all directors by virtue of voting

control, the cases are inapplicable here because the claimed dominator in this case (Tagliabue) has no voting control and is, in fact, subject to the directors' (clubs') voting control.

■ The Raiders next argues that the failure of the various boards to appoint a special litigation committee is itself evidence of demand futility. It relies on *Zilker v. Klein* (E.D.Ill. 1981) 510 F.Supp. 1070 (*Zilker*). This reliance is erroneous.

In *Zilker*, the trial court denied a motion for summary judgment in a derivative suit where the plaintiff made no demand but argued that demand was futile because the complaint alleged "a long course of events involving many decisions either participated or acquiesced in by the entire Board." (*Zilker, supra,* 510 F.Supp. at p. 1073.) In response to the defendants' argument that the corporation could have referred the suit to a special litigation committee if the plaintiff had made demand, the trial court offered that the argument "proves too much, for there is nothing to have prevented Defendants from taking precisely that action *after* [the plaintiff's] complaint was filed." (*Ibid.*) It then stated: "It should be remembered that on Defendants' motion for summary judgment all reasonable inferences are to be drawn in plaintiff's favor. Defendants' failure to deal with the matter independently for nearly four years supports the inference that a demand would in fact have been futile and thus defeats summary judgment on this score." (*Id.* at pp. 1073-1074.)

*Zilker* is distinguishable because, in this case, the Raiders submitted no evidence that the various boards failed to deal with the derivative claims independently. A disinterested board can be informed of derivative claims via the derivative suit and, if it concludes that the claims have no merit, seek summary judgment. (Cf. *Findley v. Garrett* (1952) 109 Cal.App.2d 166, 177 [240 P.2d 421] [disinterested board can refuse shareholder's demand to sue].) A special litigation committee is mandated only when the board is not independent. (See *Finley v. Superior Court* (2000) 80 Cal.App.4th 1152, 1163 [96 Cal.Rptr.2d 128].) The Raiders' argument simply assumes that the various boards were not independent and therefore had to appoint a special litigation committee to investigate its derivative claims.

In short, a board's failure to appoint a special litigation committee to investigate the claims made in a derivative suit cannot raise an inference of demand futility because there is no necessity to appoint a special litigation committee if the board itself is disinterested. (Cf. *Seminaris v. Landa* (Del.Ch. 1995) 662 A.2d 1350, 1353 [board's appointment of a special litigation committee does not concede demand futility unless the board is not

independent].) Again, the Raiders was required to show facts specific to each director from which a lack of independence could be inferred. (*Shields v. Singleton, supra,* 15 Cal.App.4th at p. 1622.)

The Raiders next argues that the clubs as directors cannot exercise independent judgments on whether to sue Tagliabue and Austrian because they have divided loyalties. It relies on declarations submitted by 23 clubs to the effect that each club would have exercised business judgment to do what was best for the NFL and the respective club on any demand by the Raiders to investigate claims of wrongdoing by NFL employees. According to the Raiders, the clubs cannot have undivided loyalty to the NFL when they must also consider their individual interests.

Again, the argument is a non sequitur. All of the clubs are directors of the NFL, and there are no other directors. All of the clubs are owners of the NFL, and there are no other owners. Thus, in the context of wrongdoing by NFL employees, damage to the NFL is coextensive with damage to the clubs. There is therefore no potential for a club, as a director, to divide loyalties between the NFL and the club.

The Raiders finally urges that the clubs' passage of Resolution FC-7 raises a reasonable doubt about the clubs' disinterest.

The clubs passed the resolution in 1998 without dissent and with four abstentions. The resolution ratified the NFL's interest in pursuing international football via the World League and indemnified Tagliabue and Austrian from four of the derivative causes of action in this case. According to the Raiders, the clubs passed the resolution after only cursory consideration and, thus, failed to exercise independent business judgment. ■ The Raiders concludes that, because the clubs failed to exercise independent business judgment in 1998, the inference is raised that the clubs would have failed to exercise independent business judgment had the Raiders made a demand to sue Tagliabue and Austrian in 1996.

The point is without merit. Evidence leading only to speculative inferences is irrelevant in light of Evidence Code section 210, which requires that evidence offered to prove or disprove a disputed fact must have a tendency in reason for such purpose. (*People v. Kraft* (2000) 23 Cal.4th 978, 1035 [99 Cal.Rptr.2d 1, 5 P.3d 68]; *People v. De La Plane* (1979) 88 Cal.App.3d 223, 244 [151 Cal.Rptr. 843].)

Here, the ultimate fact to be inferred (demand futility in 1996 because the clubs would have failed to exercise independent business judgment) is

speculative to some extent. But it is too attenuated to infer a propensity to act in a certain way (from acting that way once in 1998) and then to infer from that propensity that the actor would have acted in that same way on a specified occasion in 1996 (before the propensity was even established). Stated another way, in order to reach the ultimate 1996 fact from the clubs' 1998 act, one must first speculate that the clubs invariably fail to exercise independent business judgment. Such a proposition is unreasonable. The clubs' act in 1998 therefore has no tendency in reason to prove what the clubs would have done in 1996. Again, the Raiders was required to show facts specific to each director from which a lack of independence could be inferred.

The parties debate whether the Raiders' prejudgment demand concerning the 10th and 11th causes of action rendered the demand futility issue moot. In light of our decision on the merits of the issue, it is unnecessary to address mootness.

DISPOSITION

The judgment is affirmed.

Elia, J., and Mihara, J., concurred.

A petition for a rehearing was denied November 15, 2001, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied January 29, 2002.