MOSK, Acting P. J., Concurring and dissenting.
I concur as to all causes of action except the first cause of action for breach of fiduciary duty in *942 connection with the 2010 executive compensation program. I recognize that for the most part courts have rejected “say on pay”[1] cases challenging executive compensation disapproved by shareholders. (See, e.g., Robinson Family Trust v. Greig (N.D. Ohio, May 10, 2013, No. 5:12 CV 1713) 2013 WL 1943330; Raul v. Rynd (D.Del. 2013) 2013 U.S.Dist. Lexis 35256 [929 F.Supp.2d. 333]; see Sargent & Honabach, D & O Liability Handbook (2013-2014 ed.) § 110; Fairfax, Sue on Pay: Say on Pay’s Impact on Directors’ Fiduciary Duties (2013) 55 Ariz. L.Rev. 1, 25 (Fairfax);[2] but see NECA-IBEW Pension Fund ex rel. Cincinnati Bell, Inc. v. Cox (S.D. Ohio, Sept. 20, 2011, No. 1:11-cv-451) 2011 WL 4383368.) Nevertheless, I believe here plaintiffs allege something more than just shareholder disapproval of executive compensation. Those allegations are sufficient at the pleading stage to state a cause of action for breach of fiduciary duty.
Because Jacobs Engineering Group, Inc. (the Company), is incorporated in Delaware, the parties agree that Delaware law governs the Company’s internal affairs. (Corp. Code, § 2116; Grosset v. Wenaas (2008) 42 Cal.4th 1100, 1106, fn. 2 [72 Cal.Rptr.3d 129, 175 P.3d 1184].) Moreover, California courts “properly rely on corporate law developed in the State of Delaware given that it is identical to California corporate law for all practical purposes.” {Oakland Raiders v. National Football League (2001) 93 Cal.App.4th 572, 586, fn. 5 [113 Cal.Rptr.2d 255], citing Shields v. Singleton (1993) 15 Cal.App.4th 1611, 1621 [19 Cal.Rptr.2d 459].) Because this case is pending in California, California law applies regarding pleading procedures and whether the pleading states sufficient facts to constitute a cause of action. (See Hambrecht & Quist Venture Partners v. American Medical Intemat., Inc. (1995) 38 Cal.App.4th 1532, 1542, fn. 8 [46 Cal.Rptr.2d 33]; Code Civ. Proc., §430.10.)
Plaintiffs did not allege that they made a presuit demand upon the Company’s board of directors (the Board) to pursue the claim. The Delaware Supreme Court in “Aronson[ v. Lewis (Del. 1984) 473 A.2d 805, overruled on other grounds in Brehm v. Eisner (2000) 746 A.2d 244, 253] held that a court, in deciding whether a plaintiff will be excused from making a demand on the board, must evaluate ‘whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a *943 valid exercise of business judgment.’ ” (Bader v. Anderson (2009) 179 Cal.App.4th 775, 791 [101 Cal.Rptr.3d 821]; see Oakland Raiders v. National Football League, supra, 93 Cal.App.4th at p. 587.) “[T]he two-prong test under Aronson is disjunctive; accordingly, there is demand excusal if either prong is satisfied. (Brehm v. Eisner[, supra,] 746 A.2d [at p.] 256.)” (Bader v. Anderson, supra, 179 Cal.App.4th at p. 791, fn. omitted; see generally 1 Balotti & Finklestein, Delaware Law of Corporations and Business Organizations (3d ed. 2013) § 13.14, pp. 13-52 to 13-53 (Balotti).)
Delaware courts have said “demand will be excused based on a possibility of personal director liability only in the rare case when a plaintiff is able to show director conduct that is ‘so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists.’ ” (In re Citigroup Inc. Shareholder Derivative Litigation (Del.Ch. 2009) 964 A.2d 106, 121, fn. omitted.) As stated by the court in Aronson v. Lewis, supra, 473 A.2d at page 812, “the entire question of demand futility is inextricably bound to issues of business judgment and the standards of that doctrine’s applicability.” “[0]nly where ‘a plaintiff has alleged facts with particularity which, taken as true, support a reasonable doubt that the challenged transaction was not the product of a valid exercise of business judgment ... is demand excused.’ ” (Balotti, supra, § 13.14, p. 13-53, quoting Aronson, supra, 473 A.2d at p. 815; see generally 2 McLaughlin on Class Actions (9th ed. 2012) § 9:12 (McLaughlin); see also Corp. Code, § 800, subd. (b)(2) [specificity required for alleging reasons for not making a demand on the board of directors].)
As this case arises on appeal from a judgment based on the trial court’s order sustaining a demurrer, we assume the truth of the facts alleged in the complaint and the reasonable inferences that may be drawn from those facts. (Miklosy v. Regents of University of California (2008) 44 Cal.4th 876, 883 [80 Cal.Rptr.3d 690, 188 P.3d 629].) We must liberally construe the pleadings “ ‘ “with a view to attaining substantial justice among the parties.” ’ [Citations.]” (Gerawan Farming, Inc. v. Kawamura (2004) 33 Cal.4th 1, 32 [14 Cal.Rptr.3d 14, 90 P.3d 1179].)
Plaintiffs allege that the Board adopted the 2010 executive compensation program and that in connection with the adoption of that program, each of the Board members “issu[ed]” the 2010 proxy statement requesting that the shareholders vote to approve the 2010 executive compensation program. Plaintiffs further allege that in the proxy statement, the Board made “the Company’s terrible financial results appear to be far better than they *944 were . . and the Board “tr[ied] to spin” the Company’s poor financial results in comparison with its peer companies and engaged in a “false campaign” of misrepresentations and lies, all of which plaintiffs specify in detail. Plaintiffs also allege that the compensation plan was inconsistent with the Board’s preferred pay for performance standard, with the Company’s poor financial results, and with the Company’s performance measured against the performance of its peers.
At the pleading stage, under California standards, it is reasonable to infer from plaintiffs’ specific allegations that each of the directors had actual or constructive knowledge that the peer group comparison misrepresentations contained in the 2010 proxy statement were false; each director participated in making intentionally false representations regarding the Company’s financial status compared with those of the peer companies in an attempt to obtain a favorable shareholder vote on the 2010 executive compensation program previously adopted by the Board; and these facts reflect that the Board’s compensation program was inappropriate.
The Dodd-Frank Wall Street Reform and Consumer Protection Act (15 U.S.C. § 78n-1) requires publicly traded companies to permit shareholder votes on executive compensation, but provides that the vote shall not be binding (15 U.S.C. § 78n-1(c)). Yet, there are suggestions that something more than a vote of the shareholders disapproving a compensation package may rebut the business judgment rule presumption. (Laborers’ Local v. Intersil (N.D.Cal. 2012) 868 F.Supp.2d 838, 849 [vote of 56 percent of shareholders disapproving of the company’s executive compensation package “alone is not enough to rebut the presumption of the business judgment rule,” but granted leave to amend to allege additional facts supporting plaintiff’s claim of demand futility]; Iron Workers Local No. 25 Pension Fund ex rel. Monolithic Power Systems, Inc. v. Bogart (N.D.Cal., June 13, 2012, No.11-4604 PSG) 2012 WL 2160436, *4 [“the 64% negative vote by shareholders does not, on its own, rebut the business judgment presumption”].)
Here, in addition to the shareholders’ vote rejecting the Board’s proposed 2010 executive compensation program, plaintiffs allege the following additional facts: the Board ignored its own “pay for performance” standards; the Board rejected an independent institution’s recommendation; and in the 2010 proxy statement, requesting shareholder approval of the 2010 executive compensation program, the Board portrayed the Company’s financial results in a false light, and most importantly, lied about the Company’s performance compared with peer companies. This false impression of the Company’s performance was not corrected in a supplemental proxy statement. Plaintiffs sufficiently allege that there was a reasonable doubt as to whether the challenged transaction—the Board’s adoption of the 2010 executive compensation program—was the product of a valid exercise of business judgment *945 and that there was a breach of fiduciary duty. Such allegations are also sufficient at the pleading stage to show decisions of the directors so violated the business judgment rule as to excuse the demand upon them.
Because plaintiffs sufficiently allege facts to establish a breach of the duty of loyalty, defendants are not exculpated from liability for implementing and maintaining the 2010 executive compensation program by a provision in the Company’s certificate of incorporation, authorized by Delaware law, which restricts the Board’s liability for certain breaches of fiduciary duty. The Company’s certificate of incorporation states, “[A] director of this [Company] shall not be personally liable to the [Company] or its shareholders for monetary damages for breach of fiduciary duty as a director, except that this Article . . . shall not eliminate or limit the liability of a director: (i) for any breach of the director’s duty of loyalty to the [Company] or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) under Section 174 of the Delaware General Corporation Law; or (iv) for any transaction from which the director derived an improper personal benefit.” (See Del. Code Ann. tit. 8, § 102(b)(7).)
Exculpatory provisions cannot be the basis for dismissal when a plaintiff alleges facts sufficient to support the inference that the disclosure violation was made in bad faith, knowingly, or intentionally. “Directors’ disclosure obligations arise out of both the fiduciary duty of care and loyalty. A claim for breach of the fiduciary duty of disclosure implicates only the duty of care when the factual basis for the alleged violation suggests that the violation was made as a result of a good faith, but nevertheless, erroneous judgment about the proper scope or content of the required disclosure. However, where a complaint alleges or pleads facts sufficient to support the inference that the disclosure violation was made in bad faith, knowingly or intentionally, the alleged violation implicates the duty of loyalty.” (O’Reilly v. Transworld Healthcare, Inc. (Del.Ch. 1999) 745 A.2d 902, 914-915, fns. omitted.)
When a plaintiff has “averred sufficient circumstantial evidence to permit the inference that one or more defendants may have knowingly withheld material information from the Company’s shareholders,” then such allegations may be deemed to implicate a “violation of the directors’ duty of loyalty . . . , and this would not warrant immunity under the exculpatory clause of the Company’s corporate charter.” (In re Reliance Sec. Litig. (D.Del. 2000) 91 F.Supp.2d 706, 732.) “Put simply, if a complaint properly pleads a non-exculpated claim, that claim at least survives a motion to dismiss.” (Orman v. Cullman (Del.Ch. 2002) 794 A.2d 5, 41.) “[T]o the extent that directors have engaged in conscious wrongdoing . . . , the exculpatory charter provision does not insulate them from fiduciary duty claims .. . .” (Production *946 Resources Group, L.L.C. v. NCT Group, Inc. (Del.Ch. 2004) 863 A.2d 772, 795, overruled on other grounds in North American Catholic Educational Programming Foundation, Inc. v. Gheewalla (Del. 2007) 930 A.2d 92, 102, fn. 43.)
The allegations of the misrepresentation concerning the peer group comparisons, coupled with plaintiffs’ allegation that the shareholders voted to disapprove of the Company’s executive compensation program, sufficiently allege that the Board acted in bad faith in connection with its decision to implement the 2010 executive compensation program so that any exculpatory clause is not applicable. (See 2 McLaughlin, supra, § 9.12.) Defendants have the burden to establish the application of the exculpatory clause. (Emerald Partners v. Berlin (Del. 1999) 726 A.2d 1215, 1223-1224; see Sanders v. Wang (Del.Ch., Nov. 8, 1999, No. 16640) 1999 WL 1044880, p. *11 [“use of exculpatory provisions to shield fiduciaries from personal liability presents an affirmative defense not amenable to pre-trial disposition”].)
For all of the reasons stated above, plaintiffs sufficiently allege that there is a reasonable doubt that the Board’s adoption of the 2010 executive compensation program was the product of a valid exercise of business judgment. Plaintiffs adequately plead facts that establish that a presuit demand would have been futile as to the first cause of action. As noted, because the issue of the futility of the demand upon the Board is intertwined with the business judgment rule, for the same reasons that the allegations are sufficient at the pleading stage to overcome the demand requirement, those allegations are also sufficient to state a cause of action for a breach of fiduciary duty. (See Fairfax, supra, 55 Ariz. L.Rev. at p. 25 [“Despite shareholders’ efforts to link say on pay with directors’ duties, say on pay suits have been dismissed at the pleading stage with overwhelming frequency. . . . [S]uch dismissals are a mistake because they ensure that fiduciary duty law plays virtually no role in the current reform effort.” (fn. omitted)].) And the allegations are sufficient at the pleading stage to render inapplicable the exculpatory clause. The allegations are more appropriately dealt with at postpleading stages of the litigation than by way of a demurrer.
I would reverse as to the first cause of action only. Plaintiffs’ other causes of action against the individual defendants did not, inter alia, allege sufficient facts showing harm so as to constitute causes of action. As to the causes of action against Cook & Co., plaintiffs have not adequately set forth what provision of the Cook & Co. contract was breached nor alleged the required scienter for Cook & Co. to be an aider and abettor of a breach fiduciary duty.
*947 In connection with the increasing number of shareholder derivative actions concerning executive compensation, “[t]he issue of shareholders being able to control executive compensation will be part of the legal discussion for the foreseeable future.” (Nelson, supra, 20 U. Miami Bus. L.Rev. at p. 209.)

“Say on pay” is a term used for the right of shareholders to vote on executive compensation.

Another recent article discusses some conflicting rulings. (See Nelson, Ending the Silence: Shareholder Derivative Suits and Amending the Dodd-Frank Act so “Say on Pay” Votes May be Heard in the Boardroom (2012) 20 U. Miami Bus. L.Rev. 149, 180 (Nelson).)